Charles E. ROSEBROOK and Lois W. Rosebrook, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 38765.

United States District Court
N. D. California, S. D.

Oct. 19, 1960.

Eugene Brenner and Harry L. Freeman, San Francisco, Cal., for plaintiff Rosebrook.

Richard Carico, Asst. U. S. Atty., San Francisco, Cal., for defendant United States.

SWEIGERT, District Judge.

Plaintiffs, Charles E. and Lois W. Rosebrook,[1] citizens of the United States and residents of San Mateo County, California, bring this suit under 28 U.S.C. § 1346(a) (1) for a refund of $303.72 of federal income tax, which they claim was erroneously assessed and collected from them for the year 1955, together with interest assessed thereon in the sum of $59.37 from April 15, 1956 to the date of payment, September 28, 1959, together with interest thereon at the rate of one-half of 1% monthly since the date of payment.

The question presented to the Court is whether gain on the installment sale of an interest in land is, in the circumstances of this case, capital gain on the sale of a capital asset within the meaning of Internal Revenue Code, 1954, 26 U.S. C. §§ 1221, 1222, 1202, and regulations to Section 1221, Reg. Sec. 1.1221–1, and as reported by plaintiff taxpayer, or whether such gain, within the meaning of the law and the regulations, is ordinary income from a sale in the ordinary course of a business, as claimed by the Commissioner of Internal Revenue.

The Court finds that the facts are substantially as follows:

For some time prior to 1953, George W. Williams, plaintiff's father, had been attempting to purchase approximately 1,159.6 acres of San Francisco peninsula land owned by the San Bruno Land Company.

He was not able to obtain sufficient financing to make the purchase until 1953 when he interested a group, including himself, Frank Burrows, Andrew Conway, Martin Wunderlich and Thomas

1. Plaintiff, Charles E. Rosebrook, is involved in this case solely by reason of having filed a joint tax return for the year 1955 with his wife, Lois W. Rosebrook.

Culligan—all of whom were prominent in the real estate subdivision business.

On April 23, 1953, these parties entered into an agreement (Def. Ex. A) whereby they would purchase the stock of San Bruno Land Company, for a total of $1,150,000, for the purpose of acquiring the 1,159.6 acres of land and that after acquisition they would dissolve the corporation and take the land as tenants in common in proportion to their respective contributions.

On the same day they entered into another, separate memorandum (Def. Ex. B) to the effect that the respective tenants in common would hold the land for six months in order to realize a capital gain and then sell it to a development corporation to be formed by the parties for the purpose of developing and subdividing the land, the stock in any such corporation to be issued—one third to Williams and Burrows, one third to Conway & Culligan and one third to Wunderlich. (See Def. Ex. B).

It was understood that these respective parties were acting, not only for themselves, but for other interests represented by them.

Accordingly, on May 7, 1953, the group purchased the capital stock of the San Bruno Land Company. The corporation was immediately liquidated and the land was taken in the name of the group who then quitclaimed it to all contributing interests as tenants in common according to their respective contributions to the purchase price and took back a power of attorney for purposes of management.

Among the contributing interests represented in these transactions by George W. Williams was a certain irrevocable trust which he and his wife had created in 1942 for their daughter, Lois Rosebrook, who is the principal plaintiff in this case. Her father, George W. Williams, was sole trustee. In 1953 there was cash on hand in the trust in the amount of $10,000. Williams, acting as trustee, contributed $7,000 on behalf of the trust as part of the contribution of his group to the acquisition of the San Bruno land. In due course, the trust received a conveyance of a 1% interest therein as tenant in common.

On October 28, 1953, Williams, Burrows, Conway, Culligan and Wunderlich, and an outside party, organized Consolidated Land Company for the purpose of subdividing and developing the San Bruno land.

On December 18, 1953, when plaintiff was 28 years of age, the trust was dissolved and all the trust assets, including the 1% interest in the San Bruno land, were transferred by her father as trustee, into her name.

On February 10, 1954, the tenants in common of the 1,159.6 acres, sold and conveyed 884.2 acres of the parcel to Consolidated Land Company for a total purchase price of $1,768,500, payable in $100,000 cash and an installment note of the corporation for the balance.

Plaintiff, concurring in the suggestion of her father, conveyed her 1% interest to the corporation and received the sum of $1,000 in cash and a 1% interest in the installment note for the balance.

The Commissioner ruled that the gain on this sale was not a capital gain, but ordinary business income. This ruling was upon the theory, and the Government here contends, that plaintiff, Lois Rosebrook, in fact, held her 1% interest for the same purpose and with the same intent as all others participating in the venture and, further, that even if such was not her intent and purpose, the intent and purpose of her father, and others in the venture would be imputed to her as a matter of law by reason of her participation in it.

Assuming, and finding for the purpose of this case, that George W. Williams, plaintiff's father, trustee and agent, and others in the joint venture held their interests in this land primarily for sale to customers in the ordinary course of their business, it does not necessarily follow that this plaintiff held her 1% interest with the same intent and purpose.

The evidence in this case does not show that either plaintiff or her father, as trustee, agent or otherwise, intended that plaintiff, whose interest was represented by him in the transaction, would have any interest or activity in the proposed development company which was to be the corporate device through which the father and certain other members of the venture, were to develop the land in the ordinary course of their business.

On the contrary, the evidence shows that plaintiff was not to have, and did not ever acquire, any interest in, or take up any activity in, Consolidated Land Company, the development company which was eventually formed by plaintiff's father and other members of the venture for their business purposes.

Plaintiff, and some other represented parties, whose funds were invested in the land, were not to have any interest in Consolidated Land Company. (See, trans. p. 123).

All that plaintiff received for the sale of her 1% interest in the land was a $1,-000 down payment and the balance in accordance with an installment note executed by the corporation. (See trans. pp. 57–58). She had no further concern with the development of the land for business purposes after the sale of her interest to Consolidated Land Company. She never became a stockholder, officer, director or employee of Consolidated Land Company. (Tr. pp. 40, 58). She knew of no commitments which her father had made for sale of the property to Consolidated Land Company and knew nothing about it. (Tr. p. 53).

Even if her father, as her trustee, invested her trust funds in the land because he knew that it was worth more than it cost, and that a large part of it would eventually be sold at a profit to a development company in the course of his business activities, this would be, as far as plaintiff's interest was concerned, nothing more than an investment in a capital asset with a view to eventual sale at a profit. Indeed, it would have been nothing more than an investment for all

members of the venture if that were all there was to it. The situation of others in the venture is differentiated from plaintiff's situation by the fact that they held their interests with a view to eventual disposition through the medium of a development corporation to customers in the ordinary course of their business. The evidence, however, shows that plaintiff was not in any such situation.

We are of the opinion, therefore, that plaintiff did not acquire or hold her interest in this property for sale in the course of any business of hers, no matter how the transaction may call for a different conclusion with respect to others.

Plaintiff's sale of her 1% interest in this 884 acre parcel of San Bruno lands was the first sale of real estate ever made by her and, with the exception of a subsequent sale in November, 1956, of her 1% interest in an additional 80 acres of the land to Consolidated Land Company for a shopping center, it has been her only sale of real estate.

Nor had the trust created for her by her parents, ever sold a parcel or any interest in real property, although it held, and plaintiff continues to hold, interests in two parcels of real estate.

Plaintiff is not, and never has been a dealer in real estate, has never held a real estate broker's license, is not a member of any partnerships dealing in real estate, has no background or pattern of real estate activity or employment.

She was graduated from Stanford University in 1946 with a Bachelor of Arts degree, major in English. From 1946–1953 she was a housewife, sometimes working as a medical receptionist. From 1953 to 1955 she worked at an auto rental firm, a rug cleaning firm, and briefly for her father as a secretary. Since February, 1955, she has been a housewife and has not been otherwise employed.

The intent and purpose of participants in a joint venture, which contemplates a sale of their respective realty interests to an ultimate purchaser, as in this case the development company, might be quite

different one from another. For some it may be just a step in carrying on their business; for others it may be merely a single opportune investment with a view of ultimate profit but unrelated to any business of the participant, as in the case of plaintiff here. In the absence of a true business partnership for the purpose of the transaction, which the Court finds did not exist here, the intent and purposes of the former category are not imputed to the latter category, nor does the situation of the former for tax purposes necessarily determine the situation of the latter.

Even if we assume that the acts of plaintiff's father, as trustee, in making the original investment of trust funds are binding on the beneficiary (See: Werner v. United States, 9 Cir., 1951, 188 F.2d 266, such rule would not be determinative of this case because of our finding that the father did not in fact commit plaintiff or the trust, to the business purposes existing between himself and certain of the other participants.

We have examined Bistline v. United States, 9 Cir., 1958, 260 F.2d 77, where the trial court's finding that frequent and continuous real estate sales made by a daughter after a purported gift of the properties from her father, a real estate dealer, for tax avoidance purposes, were in fact made by the daughter in the course of a real estate business in joint enterprise with her father.

The case is clearly distinguishable from the instant case on the facts and in the inferences to be reasonably drawn.

Further, as stated by the Court in Bistline at page 80 quoting from Stockton Harbor Industrial Co. v. Commissioner, 9 Cir., 1954, 216 F.2d 638, 650, "What is and what is not trade or business and when property is or is not held for sale to customers are questions of fact," and, further, "This Court has never set up formulas of fact as rules of law."

Although the determination of the Commissioner is presumed to be correct, we believe that there is no evidence in this case to support a finding that the plaintiff held her 1% interest in this realty primarily for sale in the course of her business and, further, that the evidence negatives any such inference.

Judgment is, therefore, awarded to plaintiffs with directions that they prepare findings of fact and conclusions of law, in accordance with this Opinion, as provided by Rule 21 of this Court, West's Ann.Code.