UNITED STATES of America, Appellant,

v.

Charles E. and Lois W. ROSEBROOK, Appellees.

No. 17387.

United States Court of Appeals Ninth Circuit.

May 24, 1963.

Before HAMLEY and DUNIWAY, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge.

The Government appeals from a District Court judgment which allowed taxpayer Lois Rosebrook [1] in her tax refund case, capital gains treatment on the sale of her one per cent interest in an 884-acre tract of land on the San Francisco peninsula.

The Court found that the Taxpayer did not hold her interest in such lands "for sale to customers in the ordinary course of trade or business" and that her interest was therefore not excludable from classification as a "capital asset" within the meaning of § 1221 of the Internal Revenue Code of 1954. [2]

The Government in this appeal contends that the major participants in the acquisition of the land, of which the 884-acre tract was a part, were all prominent in the real estate subdivision business and that they held their interests in this land primarily for sale to customers in the ordinary course of their business. Therefore, regardless of Taxpayer's actual intent, because of her legal or equitable ownership of an undivided interest in the land which was the asset of a joint venture, the intent of the joint venturers is imputed to her.

In 1942, when the taxpayer was a minor and about to enter college, her father and mother created for her an irrevocable trust with her father as the sole trustee. The trust owned some shares of stock and an interest in several pieces of real estate. By May, 1953, the trust also had approximately $10,000 in cash.

Prior to 1953, Taxpayer's father, George W. Williams, had acquired an option to purchase approximately 1160

Louis F. Oberdorfer, Asst. Atty. Gen., Harold M. Seidel, Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., and Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for appellant.

Eugene J. Brenner and Harry L. Freeman, San Francisco, Cal., for appellees.

1. Charles E. Rosebrook is also a party solely because he filed a joint return with his wife, Lois Rosebrook. We will refer to the wife as Taxpayer.

2. 26 U.S.C. "§ 1221. Capital asset defined "For purposes of this subtitle, the term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business) but does not include—
"(1) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *."

acres of San Francisco peninsula land owned by San Bruno Lands, Incorporated. He lacked sufficient assets to make the purchase alone. Early in 1953, he interested Frank Burrows, Andrew Conway, Martin Wunderlich and Thomas Culligan, all prominent real estate men, to join him in purchasing this large tract.

On April 23, 1953, these men, for themselves and for unnamed interests whom they represented, agreed to purchase all of the capital stock of San Bruno Lands for $1,150,000. They also agreed to dissolve the corporation immediately and take the 1160 acres of land owned by the corporation as tenants in common in proportion to their respective contributions. The agreements provided that the tenants in common would hold their undivided interests for at least six months in order to qualify for capital gains treatment. They would then sell the land to a development company to be organized by the principal contributors for the purpose of developing and subdividing the land.

Williams and Burrows agreed to contribute one-third of the purchase price, Wunderlich one-half, and Conway and Culligan one-sixth. Notwithstanding their unequal contributions, each group was to receive one-third of the stock issued by the new development company.

Pursuant to these agreements, the group on May 7, 1953, purchased the capital stock of San Bruno Lands, dissolved the corporation, and after taking title, quit-claimed it to themselves and the various other contributors as tenants in common. They took back powers of attorney for the sole purpose of management.

Among the group represented in these transactions by Williams was the irrevocable trust which he and his wife had created for their daughter, Lois Rosebrook. Williams contributed $7,000 of the trust's money toward the purchase, and upon the dissolution of San Bruno Lands, the trust received a conveyance of a one per cent undivided interest in the land.

In December, 1953, the trust was dissolved and all of the trust assets, including the one per cent interest in the land, were transferred to the Taxpayer.

In February, 1954, all of the tenants in common of the 1160-acre tract sold and conveyed 884 acres to Consolidated Lands, the new development company which had recently been organized in substantial conformity with the original plan. The sales price was $1,768,500, payable $100,000 in cash and the corporation's installment note for the balance.

Taxpayer, at her father's suggestion, conveyed her one per cent interest to Consolidated Lands, and in return received $1,000.00 in cash and a one per cent interest in the installment note.

Neither the Taxpayer nor the trust created for her benefit was a shareholder, director, officer or employee of Consolidated Lands. Taxpayer had no real estate experience of any kind. Since her graduation from college, where she majored in English, she devoted all of her time to being a housewife except for short periods when she worked as a medical receptionist and as secretary to her father as well as for a rug-cleaning firm and an auto-rental company.

The sale of her one per cent interest in the 884-acre tract was the first sale of real estate made by her. Except for one other sale of her interest in another portion of the 1160-acre tract, made approximately three years later, it was the only real property which either she or the trust created for her had sold.

Taxpayer had no knowledge of the existence of the joint venture agreement between her father and the other principal contributors dated April 23, 1953, nor did she enter into a written or oral agreement by which she either personally became a party to such agreement or personally ratified it.

She was unaware of any commitment by the joint venture for the sale of the tract or any portion of it to Consolidated Lands. The trust property was conveyed to her without any oral or written conditions attached to it. After the sale of the

884-acre tract of Consolidated Lands, she had no further interest in or concern with it.

The Court also found as issues of fact:

"Whatever business purpose he might have had acting in his individual capacity, George W. Williams, as trustee, did not commit the trust for the benefit of the [Taxpayer] * * *, or the [Taxpayer] * * *, to a purpose of holding property for sale to customers in the ordinary course of a trade or business."

"[Taxpayer] * * * did not hold her one per cent (1%) interest in the San Bruno lands for sale to customers in the ordinary course of trade or business."

Upon these findings, the Court concluded that Taxpayer did not hold her interest "primarily for sale to customers in the ordinary course of trade or business"; that her interest was a capital asset and her profit entitled to capital gains treatment.

■ On numerous occasions this Court has held that the question of whether a taxpayer holds property primarily for sale to customers in the ordinary course of business is a question of fact "which ordinarily is governed by the findings of the trial court, unless these are clearly erroneous or unless an appellate court is convinced by an examination of the entire record that a mistake has been committed." Bistline v. United States, 9 Cir., 1958, 260 F.2d 77, 78; Austin v. Commissioner, 9 Cir., 1959, 263 F.2d 460; United States v. Beard, 9 Cir., 1958, 260 F.2d 81; Stockton Harbor Industrial Co. v. Commissioner, 9 Cir., 1954, 216 F.2d 638.

■ The findings of the Court were amply supported by the evidence. In fact, the Government does not challenge the Court's findings, but asserts that the Court erred in failing to hold that the intent of the joint venturers was imputed to Taxpayer as a matter of law and that upon the dissolution of the trust and the transfer of the trust assets to her, "tax-

payer was bound by her trustee's acquisition of an interest in the venture and hence by the venture's purposes and commitments."

■ This same contention was asserted in the trial court as well as in a companion case in the Tax Court, with almost identical facts, involving the Taxpayer's sister. The able District Judge in a well-reasoned opinion pointed out that not all participants in a joint venture need have the same intent and purpose. "For some it may be just a step in carrying on their business; for others it may be merely a single opportune investment with a view of ultimate profit but unrelated to any business of the participant, as in the case of [Taxpayer] * * * here." The trial judge also pointed out that where, as here, the trustee committed neither the trust nor the taxpayer to the business purposes existing between himself and certain other participants, the intent and purpose of one group may not be imputed to the other. Rosebrook v. United States, D.C. N.D.Cal.1960, 191 F.Supp. 356.

The Tax Court concluded that the Taxpayer's sister, for whom an identical trust had been set up " * * * may not properly be regarded, by imputation or otherwise, to have been a member of any business organization which was, during the period when she owned her 1 percent undivided interest, holding the land for sale to customers in the ordinary course of a trade or business." Berryman v. Commissioner, 37 T.C. page 45.

We do not believe that the making of an investment by a trustee in a joint venture irrevocably imputes to the beneficiary of the trust the intentions of the managers of the venture regardless of when the trust property is removed from the venture.

Here the Taxpayer's trustee acquired property in a joint venture without Taxpayer's knowledge of either the interest acquired or the nature of the venture. Prior to the time there was a sale, Taxpayer received all of the property in her trust estate. She received it without any conditions and without any obligation

to sell her interest in the jointly held property to a corporation in which she had no interest and which was owned and controlled by the organizers of the joint venture, who intended to operate it for their and not her profit. In our view their intent may not be imputed to her.

Judgment affirmed.