JEANESE, INC., a corporation, and Frank Lee Crist, Donald W. Kirk and Darwin Bryan, Trustees for the Stockholders of Jeanese, Inc., Transferees, Appellants,

v.

UNITED STATES of America, Appellee.

No. 19295.

United States Court of Appeals
Ninth Circuit
Feb. 4, 1965.

William Lahanier, Melvin, Conlan & Harless, San Francisco, Cal., for appellants.

504

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, David I. Granger, Carolyn R. Just, Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before POPE, BARNES and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellants appeal from a judgment of the District Court denying appellants' claim against the United States for a refund of alleged overpayment of Federal Income Taxes paid by them for the fiscal period commencing February 1, 1957 and ending January 16, 1958. The decision of the District Court is reported at 227 F.Supp. 304 (1964). The facts were in large measure stipulated by the parties.

The record may be summarized as follows: In 1953, four individuals formed a partnership and acquired King Ranch, a parcel of land of approximately 90 acres near Los Altos, California. The partnership, later increased to thirteen individuals, intended to subdivide the entire parcel, to sell the resultant lots, and to acquire and subdivide additional land in the area. To permit gradual development of King Ranch, it was divided into four arbitrary units, known as Mentone 1, Mentone 2, Mentone 3, and Mentone 4. Mentone 1 and 2 were the first two units subdivided, and the partnership sold a total of 62 of the 108 lots in those units prior to incorporation of Jeanese.

Early in 1955, the partnership filed a tentative subdivision map with the Santa Clara County Engineer, showing the development of Mentone 3 and 4 as a single unit. The plan was never submitted for approval to the County of Santa Clara or the City of Los Altos and was abandoned prior to commencement of any work thereon.

In October, 1954, Jeanese was incorporated for the purpose of land development. In February 1955 Jeanese took over the assets of the partnership and continued development of King Ranch. Jeanese sold the lots remaining in Mentone 1 and 2 prior to commencement of the fiscal period in question.

In November, 1955, a final subdivision map for Mentone 3 was submitted to, and approved by, the City of Los Altos. No on-site improvements—streets, sewers, etc.—had been completed, and Jeanese was required to, and did, deposit funds in escrow to guarantee completion. The improvements were not completed until the summer of 1957 and were accepted by the City of Los Altos in October, 1957.

Jeanese sold thirteen of the Mentone 3 lots prior to May 23, 1956. On that date a deposit receipt pertaining to 36 of the 50 lots then remaining in Mentone 3 was executed by and between Jeanese, Inc., as seller, Builders Associates, Inc., as buyer, and R. V. Jones and Co., as real estate agent, whereby, in consideration of a $250.00 deposit, Jeanese agreed to sell these lots to Builders Associates, and Builders Associates agreed to buy them. The instrument recites several conditions precedent, to be fulfilled by the buyer, before any of the lots were to be conveyed by the seller. A copy of the agreement appears as an appendix to this opinion. Between the time of the execution of the deposit receipt and the time of commencement of the fiscal period in question, nine of the lots were conveyed to Builders Associates under the Deposit Receipt Agreement.

On January 19, 1957, the board of directors of Jeanese adopted a resolution to dissolve and liquidate the corporation, which was consented to in writing by the stockholders holding a majority of the voting power. The decision to dissolve and liquidate resulted from the death of the guiding spirit of Jeanese, financial difficulties, and disagreement among the stockholders. On the same day the board of directors accepted an offer of $208,000 in cash for all of Mentone 4. The offer was later accepted by a majority of the stockholders. Jeanese received the purchase price on February 5, 1957 and reported the amount received on the income-

tax return it filed for the fiscal period in question, claiming the nonrecognition of gain or loss provision of Section 337 of the Internal Revenue Code of 1954. The gain of $96,010.05 on the sale of Mentone 4 was not included as a part of Jeanese's taxable income. At the time of the sale Mentone 4 had never been subdivided, no on-site improvements had been made, and it was undeveloped farm land.

All of the lots in Mentone 3 which had not been conveyed to Builders Associates or its assignee at the time of the adoption of the plan to dissolve and liquidate Jeanese, and covered by the Deposit Agreement, were in fact conveyed to Builders Associates or its assignee as per the terms of the Deposit Agreement within the fiscal period February 1, 1957, and ending January 16, 1958.

On January 13, 1958, the stockholders executed an agreement transferring all of Jeanese's remaining assets to Frank Crist and two other individuals as a liquidating dividend, in trust, for Jeanese's stockholders. No question as to the propriety of the use of trustees has been raised by the government, thus no issue is presented as to whether Jeanese was liquidated within the 12-month statutory period.

After audit, the Internal Revenue Service determined that the gain on the sale of Mentone 4 was not subject to the nonrecognition provision of section 337, and assessed a deficiency in Jeanese's federal income taxes in the amount of $38,667.04 based in part upon the inclusion of the gain from the sale of Mentone 4.

The solution of the problems presented by this appeal requires the application of the relevant provisions of Section 337. The relevant provisions of said section are subsections (a) and (b).

"Internal Revenue Code of 1954:

"§ 337. *Gain or Loss on Sales or Exchanges in Connection with Certain Liquidations*.

"(a) *General Rule.*—If—

"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

"(b) *Property Defined.*—

"(1) *In general.*—For purposes of subsection (a), the term 'property' does not include—

"(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

"(B) * * *

"(C) * * *

"(2) *Nonrecognition with respect to inventory in certain cases.*—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term 'property' includes—

"(A) such property so sold or exchanged, and

"(B) * * *."

The District Court properly posed the problem presented to it, in the following words:

"In order for Jeanese to prevail, it must show that Mentone 4 was

not a section 337(b) (1) (A) asset, or if it was, that the bulk sale exception of section 337(b) (2) applies."

After a careful and detailed review of the record, the District Court concluded:

"In summation, the record shows that: (1) Jeanese was engaged in no other business except that of selling real estate; (2) the only realty it had to sell was Mentone 1, 2, 3 and 4; (3) it intended to, and did, sell each portion in the most advantageous manner available to it under the circumstances; (4) Mentone 4 was an arbitrary unit of a larger parcel of land; (5) the land was purchased for the purpose of subdivision; (6) a tentative subdivision map was filed showing the development of Mentone 3 and Mentone 4 as a single subdivision; (7) this plan was abandoned due to lack of cash; (8) it was decided to develop Mentone 3 first, and then Mentone 4; (9) R. V. Jones, the guiding spirit of the corporation, died, and thereafter, due to disagreements among the shareholders and due to inability to raise money to continue subdividing, the board of directors resolved to dissolve and liquidate; (10) on the same day an offer to purchase all of Mentone 4 as a single parcel was accepted by the board. These facts disclose no investment motive or purpose in holding Mentone 4 other than for sale to customers. The facts demonstrate to the Court that Mentone 4 was the last of four parcels intended to be subdivided in an orderly fashion, and that the only reason it was not subdivided was due to the death of Jones and subsequent discordance in shareholder harmony to such an extent that Jeanese had to be liquidated."

and then stated:

"Thus, the Court finds as a matter of fact that Mentone 4 was property held primarily for sale to customers in the ordinary course of its trade or business. As such, it was a section 337(b) (1) (A) asset."

■ The determination of whether Mentone 4 was being held by Jeanese primarily for sale to customers in the ordinary course of Jeanese's trade or business is a question of fact and such finding shall not be set aside unless clearly erroneous. Fed.Rules Civ.Proc., Rule 52(a) as amended, 28 U.S.C.A. See, Burbank Liquidating Corporation v. C. I. R., 335 F.2d 125 (9th Cir. 1964); United States v. Rosebrook, 318 F.2d 316 (9th Cir. 1963); Los Angeles Extension Company v. United States, 315 F.2d 1 (9th Cir. 1963), and cases there cited.

■ Our review of the record satisfies us that the finding of fact of the District Court is supported by substantial evidence and is not clearly erroneous.

After determining that Mentone 4 was a § 337(b) (1) (A) asset, the District Court proceeded to determine if the bulk sale exception of § 337(b) (2) was applicable under the facts presented by the record.

■ The District Court found "as a matter of fact that the deposit receipt was not a contract of sale, * * *." Whether such finding be one of fact or a mixed one of law and fact, we believe that it is supported by the record and applicable law.

The District Court then concluded "that the sale of Mentone 4 was not a sale of substantially all of the property of Jeanese since, at that time, Jeanese owned 27 lots in Mentone 3 which were the subject of an executory contract to sell."

■ We believe that the District Court erred in so concluding. Admittedly, Mentone 4 constituted substantially all of the property of Jeanese described in § 337(b) (1) (A), laying aside for the moment its interest in the 27 Mentone 3 lots subject to the Deposit Receipt Agreement. Admittedly, Mentone 4 was sold to one person, in one transaction. In holding that the Mentone 3 lots subject to the Deposit Agreement deprived Jeanese of the nonrecognition

provisions of gain or loss on the sale of Mentone 4, the District Court overlooked a part of the provision contained in § 337(a) (2). § 337(a) (1) requires a corporation to adopt a plan of complete liquidation, and § 337(a) (2) provides:

> "within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, *less assets retained to meet claims,*

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

We have italicized the clause which the District Court failed to consider. There is no dispute that the 27 lots subject to the Deposit Agreement were withheld from distribution and retained by the corporation. There can be no question that the interest of Jeanese in such lots constituted "assets". It appears equally clear that such "assets" were subject to a "claim", under the Deposit Receipt by Builders Associates or its assignees. The statute does not define the term "claim", nor has any decision, of which we are aware, done so in the ten years since the enactment of the statute. The Deposit Receipt is supported by valuable consideration. It describes the property subject thereto with specificity; the purchase price for each lot is stated; and the manner in which title is to be acquired by Builders Associates or its assignees is set forth. The lots therein described could not be sold or exchanged to others without committing a breach of the Agreement thereby subjecting Jeanese to a suit for damages in the event the Agreement could not be specifically enforced. We believe that the Deposit Receipt subjected these lots to the contractual claim of Builders Associates or its assignees. We see no reason either in law, logic or equity why this contractual claim should be distinguished from any other type of claim, secured or unsecured, for purposes of § 337(a) (2). There is no dispute that said lots were conveyed by the corporation to Builders Associates or its assignees within the fiscal period February 1, 1957, ending January 16, 1958, in exact accordance with the terms, including the sales price, contained in the Deposit Agreement. The fact that the parties to the Agreement considered themselves bound by the Agreement is evidenced by the fact that the lots described therein were conveyed in accordance with the terms of the Agreement. The statute does not exclude Section 337(b) (1) (A) property which may be retained to meet claims, but simply says "assets". To the extent Treasury Regulation § 1.337–3 otherwise provides, it is contrary to the statute.

It is our view that the Mentone 3 lots were subject to the claim of Builders Associates, or their assignees, under the provisions of § 337(a) (2) and are excluded from the property required to be distributed by the corporation in a complete liquidation. Hence, Mentone 4 was the only Section 337(b) (1) (A) type property remaining among the corporate assets. When it was sold, as it was, to one person, in one transaction, the provisions of Section 337(b) (2) were satisfied.

The judgment of the District Court is reversed and the cause remanded to the District Court.[1]

### APPENDIX A

#### Deposit Receipt
#### Mt. View, California, 5/23/56

Received from Builders Associates, Inc. Address: 2155 The Alameda, San Jose, California, Two Hundred Fifty and No (250.00) (check) Dollars as a deposit on account of purchase price of the following described property, situate in the

---

1. It was ordered below that the trial was limited to the issue of whether Jeanese was entitled under Section 337 to non-recognition of gain on the sale of Mentone 4; and that if the District Court's determination of this issue was reversed, then the case should be remanded for determination of a second ("collapsibility") issue.

City of Los Altos, County of Santa Clara, California: All of Mentone Unit #3, Tract 1479, except Lots 131, 132, 133, 134, and 135, 127, 128, 129, 130, 140, 144, 138, 143.

The total purchase price is Forty Six Hundred and No/100 per each lot Dollars and the balance of same is to be paid within..........days from date hereof, as follows: Seller to convey each lot to buyer or its assignee upon payment of $1700. Buyer or assignee will secure a construction loan for the purpose of constructing thereon a single family dwelling and will then execute a Note for the balance of the purchase price which shall be at interest of 6% per annum and be payable 8 months from date of deed or whenever the house built thereon is sold or occupied whichever sooner occurs. Said Note shall be secured by a 2nd Deed of Trust. Buyer shall take 3 lots per month, if more are taken in any one month the excess to be credited on succeeding months. Second deed of trust to be subordinated to construction loan.

And It Is Hereby Agreed: That in the event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the seller, be retained as liquidated and agreed damages.

That in the event the title to said property shall not prove marketable and said seller shall not perfect, or be able to perfect same within ninety (90) days from this date, the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder.

That the evidence of title is to be in the form of a policy of title insurance issued by California Pacific Title Insurance Company, and paid for by the seller.

That if the improvements on said property are destroyed or materially damaged between the date hereof, and consummation or settlement of this purchase, this contract at purchaser's election immediately become null and void and said deposit shall be returned to said purchaser on demand.

That the taxes for the current fiscal year, interest, fire insurance and rents, shall be pro-rated from date of closing transaction.

That any existing assessments and/or improvement bonds are to be paid by seller.

That possession of the premises to be given within one days after recordation of the deed.

That the Real Estate Agent is allowed one days to secure the acceptance of the seller.

That the property is sold subject to approval of owner.

Time is the essence of this contract, but the time for any act required hereunder may for sufficient cause be extended not longer than thirty days by the undersigned real estate agent.

R. V. Jones & Co.
By Carl E. Schneider,
Real Estate Agent.

I agree to purchase the above described property on the terms and conditions herein stated and authorize seller to make the conveyance to Builders Associates, Inc.

Matt Gotleib
Pres.          Purchaser.

I agree to sell the above described property on the terms and conditions herein stated, and agree to pay the above signed agent as commission 10% per cent of above purchase price, on one-half the deposit in case same is forfeited by purchaser, provided same shall not exceed the full amount of the commission.

Jeanese Corp.
Myrtle H. Jones, President
Seller.

California Pacific Title Insurance Company
148 Montgomery Street, San Francisco