CLYDE W. GROVE AND CHARITY L. GROVE, PETITIONERS *v.* COMMISSIONERS OF INTERNAL REVENUE, RESPONDENT

Docket No. 3141-68.   Filed April 21, 1970.

*Allan J. Smietanka*, for the petitioners.
*James F. Hanley, Jr.*, for the respondent.

### OPINION

SCOTT, *Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1964 in the amount of $2,153.59.

The only issue for decision is whether an amount received by petitioners as profit from the construction and sale of 18 condominium units pursuant to an agreement entitled "Joint Venture Agreement," is ordinary income or capital gain.

All of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife who resided in Chicago, Ill., at the time of the filing of their petition in this case, filed their joint Federal income tax return for the calendar year 1964 with the district director of internal revenue in Chicago, Ill., on the cash receipts and disbursements method of accounting.

Clyde W. Grove (hereinafter referred to as petitioner) and two other individuals on June 3, 1963, entered into an agreement with Edward Talaczynski and Edward Holzrichter and their wives entitled "Joint Venture Agreement," under which an 18-unit condominium was to be built on certain property in Chicago owned by Talaczynski

and Holzrichter and their wives and upon completion the units were to be sold. The parties agreed that the property should be valued at $50,000 and petitioner and the two other individuals who owned no interest in the land were to put up $50,000 in cash. The agreement provided in part as follows:

1. John Balik will invest the sum of $25,000.00 for which he shall have a ⅛th interest in said venture; Clyde Grove will invest $12,500.00 for which he shall have a 1/12th interest in said venture and Carl Holzrichter shall invest $12,500.00 for which he shall have a 1/12th interest in said venture. Edward Talaczynski and Edward Holzrichter, shall each have a one-third interest in said venture.

2. The property in questions [sic] shall be conveyed by Edward Holzrichter and spouse and Edward Talaczynski and spouse, hereinafter referred to as parties of the first part, to a Trustee, under a land trust, and the beneficial interest under the trust shall be as follows:

Edward Talaczynski and Thelma Talaczynski, jointly ⅓rd.
Edward Holzrichter and Carol Holzrichter, jointly ⅓rd.
John Balik and Josephine Balik, jointly ⅛th.
Clyde Grove and Charity Grove, jointly 1/12th.
Carl Holzrichter and Lelia Holzrichter, jointly 1/12th.

3. The construction of said project shall be in charge of Edward Talaczynski who shall have the final decesion [sic] as to type and nature of construction of the project, except that he shall consult and discuss plans and construction with the other members of this venture. Sales shall be in charged [sic] of Edward Holzrichter, who shall negotiate sales and managing for all units. Both parties herein shall perform their duties at no additional compensation, other than their share in the profits of this venture.

\* \* \* \* \* \* \*

7. Upon the completion of the project, and after payment of all expenses and a return to each individual of his initial investment, then the profits shall be divided by the parties in accordance with their prorated shares, previously indicated, herein.

8. This shall not be deemed a partnership nor are the parties herein to be deemed partners, but rather this is a legal joint venture entered into by the parties for this sole venture to be known as "Windsor Condominiums".

9. All parties agree to cooperate in the spirit of good faith in carrying out the terms and conditions of this agreement, in the spirit in which it is made rather than the technical legal wording thereof.

10. No party hereunder shall transfer his interest herein without the full consent of all other parties.

In 1964 the condominium, known as Windsor Court Condominium #1, was completed and the 18 units were sold for $378,951.19. The cost of construction was $270,601.34, leaving a gross profit of $108,349.85 from which operating expenses of $15,314.36 were paid leaving a net profit of $93,035.49. During 1964 the amount of $20,250 was distributed to petitioner from the venture, leaving a credit balance in his capital account of $2.96. Petitioners on their 1964 Federal income tax return reported a long-term capital gain of $7,750 from "Windsor Court Corp." which they arrived at by showing a "gross sales price" of

$20,250 from which they subtracted a "cost" of $12,500, showing a resulting gain of $7,750.

Respondent in his notice of deficiency determined that petitioners' "gain of $7,752.96 from Windsor Courts Condominium #1 for 1964 is taxable as ordinary income."

Petitioner takes the position that he made an investment of $12,500 in a capital asset because he held either a "beneficial interest" in a real estate investment trust, receipts from which are taxable under section 857, I.R.C. 1954,[1] or a capital investment similar to stock in a corporation.

Respondent takes the position that the joint venture in which petitioner invested should be considered for Federal income tax purposes as a partnership under section 761, that the partnership was in the trade or business of building condominiums for sale to customers, thereby deriving ordinary income from the gain from the sales, and that under section 702(b) the income constitutes ordinary income to petitioners.

A mere reading of sections 856 and 857 shows that petitioner's $12,500 investment was not in a "Real Estate Investment Trust." One of the many requirements which was not met is that more than 100 persons hold an interest in the trust. Only five persons held an interest in the Windsor Court Condominium project.

The real question here is whether, as respondent contends, the joint venture agreement created a joint venture which is considered a partnership under Federal tax laws or a trust or other association taxable as a corporation. If we conclude that the "joint venture" is to be considered a partnership, then we must decide whether the partnership was in the trade or business of building and selling condominiums so that its income would be ordinary income to the partners under section 702(b).

---

[1] All references are to the Internal Revenue Code of 1954.

Sec. 857(b) states in part:

(b) METHOD OF TAXATION OF REAL ESTATE INVESTMENT TRUSTS AND HOLDERS OF SHARES OR CERTIFICATES OF BENEFICIAL INTEREST.—

\* \* \* \* \* \* \*

(3) CAPITAL GAINS.—

(A) IMPOSITION OF TAX.—There is hereby imposed for each taxable year in the case of every real estate investment trust a tax of 25 percent of the excess, if any, of the net long-term capital gain over the sum of—

(i) the net short-term capital loss; and

(ii) the deduction for dividends paid (as defined in section 561) determined with reference to capital gains dividends only.

(B) TREATMENT OF CAPITAL GAIN DIVIDENDS BY SHAREHOLDERS.—A capital gain dividend shall be treated by the shareholders or holders of beneficial interests as a gain from the sale or exchange of a capital asset held for more than 6 months.

Sec. 856(a) defines a real estate investment trust as follows:

(a) IN GENERAL.—For purposes of this subtitle, the term "real estate investment trust" means an unincorporated trust or an unincorporated association—

\* \* \* \* \* \* \*

(5) the beneficial ownership of which is held by 100 or more persons;

Section 761(a) [2] defines a partnership for tax purposes as including a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on and which is not a corporation or trust or estate within the meaning of the Internal Revenue Code.

Petitioners argue without citation of any specific provision of the Revenue Code or the regulations, that with their $12,500 they purchased in 1963 a 12½-percent beneficial interest in a trust and received the $20,250 in 1964 in "liquidation" of this interest or as a "liquidating dividend." Section 641 deals with the taxation of estates and trusts. Section 1.641(a)–0 of the Income Tax Regs. specifically provides that this section has "no application to any organization which is not to be classified for tax purposes as a trust under the classification rules of Sec. 301.7701–2, 301.7701–3 and 301.7701–4." (Proced. & Admin. Regs.) Section 1.761–1(a), Income Tax Regs., issued under section 761, I.R.C. 1954, defining partnerships, also refers to sections 301.7701–2, 301.7701–3, and 301.7701–4, Proced. & Admin. Regs. A consideration of these sections of the regulations shows that petitioners' $12,500 was not invested in a trust as defined therein.[3]

---

[2] SEC. 761. TERMS DEFINED.

(a) PARTNERSHIP.—For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate. Under regulations the Secretary or his delegate may, at the election of all the members of an unincorporated organization, exclude such organization from the application of all or part of this subchapter, if it is availed of—

(1) for investment purposes only and not for the active conduct of a business, or

(2) for the joint production, extraction, or use of property, but not for the purpose of selling services or property produced or extracted,

if the income of the members of the organization may be adequately determined without the computation of partnership taxable income.

[3] Sec. 301.7701–2 [Proced. & Admin. Regs.] Associations.

(a) *Characteristics of corporations.*

\* \* \* \* \* \* \*

(2) *Since associates* and *an objective to carry on business for joint profit* are essential characteristics of all organizations engaged in business for profit (other than the so-called one-man corporation and the sole proprietorship), the absence of either of these essential characteristics will cause an arrangement among co-owners of property for the development of such property for the separate profit of each not to be classified as an association. Some of the major characteristics of a corporation are common to trusts and corporations, and others are common to partnerships and corporations. Characteristics common to trusts and corporations are not material in attempting to distinguish between a trust and an association, and characteristics common to partnerships and corporations are not material in attempting to distinguish between an association and a partnership. For example, since *centralization of management, continuity of life, free transferability of interests,* and *limited liability* are generally common to *trusts* and corporations, the determination of whether a trust which has such characteristics is to be treated for tax purposes as a trust or as an association depends on whether there are associates and an objective to carry on business and divide the gains therefrom. On the other hand, since *associates* and an *objective to carry on business and divide the gains* therefrom are generally common to both corporations and *partnerships,* the determination of whether an organization which has such characteristics is to be treated for tax purposes as a partnership or as an association depends on whether there exists centralization of

The characteristics separating a trust from a partnership are centralization of management, continuity of life, free transferability of interests, and limited liability. In the instant case the venture involving the parties had no centralization of management for although the concoustruction and sales functions were delegated to two individuals of the group, those individuals had to consult with the remainder of the parties to the agreement. There was no free transferability of interest since each party was prohibited without the consent of the other parties from transferring the interest which he had in the proposed venture.[4] The agreement does not specifically state the extent of the liability of the individuals for losses.[5] There is nothing in the record indicating any agreement that the parties were not to share losses and we conclude that the parties had agreed to share losses in the same ratio as they were to share gains. The function of the venture was to construct and sell the condominiums at a profit. In our view the functions of the venture were those of a partnership and not those of a trust.

Section 702(b) states:

The character of any item of income, gain, loss deduction, or credit included in a partner's distributive share under paragraphs (1) through (8) of subsection (a) shall be determined as if such item were realized directly from the source which realized by the partnership, or incurred in the same manner as incurred by the partnership.

---

management, continuity of life, free transferability of interests, and limited liability. [Emphasis supplied.]

Sec. 301.7701–4(a) and (b), Proced. & Admin. Regs., states in part:

(a) *Ordinary trusts.* * * * Generally speaking, an arrangement will be treated as a trust under the Internal Revenue Code if it can be shown that the purpose of the arrangement is to vest in trustees responsibility for the protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit.

(b) *Business trusts.* There are other arrangements which are known as trusts because the legal title to property is conveyed to trustees for the benefit of beneficiaries, but which are not classified as trusts for purposes of the Internal Revenue Code because they are not simply arrangements to protect or conserve the property for the beneficiaries. These trusts which are often known as business or commercial trusts, generally are created by the beneficiaries simply as a device to carry on a profit-making business which normally would have been carried on through business organizations that are classified as corporations or partnerships under the Internal Revenue Code. * * * The fact that any organization is technically cast in the trust form, by conveying title to property to trustees for the benefit of persons designated as beneficiaries, will not change the real character of the organization if, applying the principles set forth in secs. 301.7701–2 and 301.7701–3, the organization more nearly resembles an association or a partnership than a trust.

[4] It should be noted that even the right to transfer would be nebulous in light of the fact that the interests were not commonly negotiable in the market.

[5] The petition alleges in par. 6(c) that:

"(c) * * * the Petitioner, * * * received for his investment a certificate of beneficial interest entitling him to participate to the extent of 12½ percent in the profits or losses of the development of the trust properties."

This allegation is admitted by respondent in his answer.

Since petitioner in this case intended to and did enter into a joint venture, it is the character of the profits in the hands of the joint venture or partnership that determines whether the income constitutes capital gain or ordinary income to petitioner.

In *Barham* v. *United States,* an unreported case (M.D. Ga. 1969, 23 A.F.T.R. 2d 1347, 69–1 U.S.T.C. par. 9356), the court stated that where a joint venture holds real estate for the primary purpose of selling it to customers in the ordinary course of business the character of the income from the property sold is determined from the standpoint of the joint venture rather than from the standpoint of each individual member. The trade or business of the partnership is separate and distinct from the intent or motivation of the partners in forming the partnership. *Raymond Bauschard,* 31 T.C. 910 (1959), affd. 279 F. 2d 115 (C.A. 6, 1960), and *Estate of Freeland* v. *Commissioner,* 393 F. 2d 573 (C.A. 9, 1968), affirming a Memorandum Opinion of this Court.

The cases of *Riddell* v. *Scales,* 406 F. 2d 210 (C.A. 9, 1969), and *United States* v. *Rosebrook,* 318 F. 2d 316 (C.A. 9, 1963), cited by petitioner are distinguishable on their facts from the instant case. In *Scales* the joint venture did not have as its objective the acquisition and sale of the parcel of land it acquired as an active real estate business. The intent was not to develop property but to restrict the activities of the venture to those necessary to a realization of profit on a speculative investment. The taxpayers in that case formed a partnership to purchase certain defaulted notes issued by a development company as part of the purchase price for land. Since there was an indication that the land would be subsequently purchased by the Department of the Navy, the participants agreed to waive further payments in return for an equal disbursement of the net sale proceeds. The holding of the court was predicated not on the intent of the individual partners in forming the joint venture but on the intent of the joint venture as a whole. The court determined that the intent of the joint venture was such as to preclude the finding of a trade or business being conducted by the joint venture even though some of the participants in the joint venture other than the taxpayer in that case were actively engaged in a real estate business.

In *United States* v. *Rosebrook, supra,* the taxpayer had a 1-percent interest in a tract of land which had been purchased for her in trust by her father. Her father was also involved with other individuals who desired to purchase the land, form a development company and then resell the land to the development company for development. The court held that while there might be a joint venture involved, the joint venture did not include the taxpayer in that case since her sole intent in the purchase of the land (or rather the intent of the trustee who made the

purchase in her name) was to realize an increase on the investment in the land and not to enter into the subsequent development. The case does indicate that there may be variant purposes among joint owners of property, some of whom form a joint venture for development while others do not. However, it does not hold that a person who is one of the joint venturers in the development project does not receive ordinary income from his partnership profit from a trade or business carried on by the partnership. See *Katherine Anne Berryman*, 37 T.C. 45 (1961), referred to in *United States* v. *Rosebrook*, *supra*, which involved a comparable interest in land of the sister of the taxpayer in the *Rosebrook* case in which we reached the conclusion that the taxpayer's profit from the sale of her 1-percent interest in the land was capital gain.

In the instant case we find that it was the intent of each of the parties that the property be developed and the condominiums completed by the joint venture for sale to customers in the ordinary course of the trade or business of the joint venture. We, therefore, hold that the joint venture in which petitioner was a participant held the property for sale to customers in the ordinary course of its trade or business and find that petitioners are not entitled to capital gains treatment on the income received from the venture.

*Decision will be entered for the respondent.*