JOSEPH C. & DENNIS J. GRUSE and DEBRA L. CAMPBELL, f.k.a. DEBRA L. GRUSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gruse v. Commissioner
Docket No. 25554-88
United States Tax Court
T.C. Memo 1990-187; 1990 Tax Ct. Memo LEXIS 206; 59 T.C.M. (CCH) 368; T.C.M. (RIA) 90187; April 10, 1990
Hugh V. Banta, for the petitioners. Steven K. Dick, for the respondent. GALLOWAY
MEMORANDUM FINDINGS OF FACT AND OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986 and Rules 180, 181, and 182. [1]
By separate notices of deficiency dated July 5, 1988, respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions To Tax [2]
Petitioner
Year
Deficiency
Sec. 6653(a)(1)
6653(a)(2)
Joseph C. Gruse
1984
$ 2,198
$ 110 *
1985
2,693
135 *
1986
4,834
242 *
Dennis J. Gruse
1984
2,186
109 *
& Debra L. Campbell, f.k.a.
Debra L. Gruse
Dennis J. Gruse
1985
2,355
118 *
1986
4,202
210 *
*209 Petitioners Joseph C. Gruse and Dennis J. Gruse are father and son and will hereinafter be referred to by their names or as "petitioners." Debra L. Campbell, formerly Debra L. Gruse, and Dennis were married in March 1972 and divorced in August 1985. Respondent has conceded that Debra L. Campbell is an innocent spouse for the year 1984 pursuant to section 6013(e). On September 30, 1988, petitioners' tax preparer/attorney filed a petition in response to the three notices of deficiency under Rule 61(a) (Permissive Joinder), which permits a joinder of more than one person in filing a petition with this Court where all or part of each participating party's tax liability arises out of the same transaction, occurrence, or series of occurrences, and in addition there is a common question of law or fact relating to those parties. The issues for decision are: (1) whether petitioners are entitled to deduct losses in the years *210 1984, 1985, and 1986, claimed to be distributable from partnership returns filed under the name of "Gruse Enterprises"; (2) whether petitioners are entitled to investment tax credits passed through from Gruse Enterprises for the taxable years 1984, 1985, and 1986; and (3) whether petitioners are liable for additions to tax under sections 6653(a) for the years in issue. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. The stipulation of facts and related exhibits are incorporated by this reference. At the time of filing his petition individually and with his former wife, Dennis J. Gruse resided in Rosedale, Indiana. Debra L. Campbell resided in Clinton, Indiana, when her petition was filed. Petitioner Joseph C. Gruse resided in Rosedale, Indiana, at the time his petition was filed. Petitioners filed their individual Federal income tax returns and partnership returns on behalf of Gruse Enterprises for the years 1984, 1985, and 1986, with the Internal Revenue Service in Memphis, Tennessee. The partnership returns disclose that both Dennis Gruse and Joseph Gruse shared equally in the losses claimed on the 1984-1986 Gruse Enterprises' returns *211 in the respective amounts of $ 8,086.39, $ 14,082.04, and $ 34,449.19. All individual and partnership returns were prepared by the tax preparer/attorney who filed the petition in this case. The principal business activity designated on the partnership returns was "auto restoration," or "auto repair" an activity carried on primarily by Dennis Gruse. However, the Gruse Enterprises expenses claimed also included deductions related to farming, an activity managed by Joseph Gruse. The partnership returns (Forms 1065), line 22 (other deductions) instruct taxpayers to attach a schedule of the various "other deductions" totaled on that line. On the Gruse Enterprises' Forms 1065 for 1984 and 1985, the tax preparer combined the expenses of both the auto restoration and farming activities on one separate schedule. No separate Schedule C or Schedule F divided the expenses by separate activity. The 1986 Form 1065 listed other deductions in excess of $ 22,000 on line 22, but contained no separate schedule of deductions for either activity. At trial, the parties stipulated to the total business expenses deducted for each separate activity. Forms K-1 on the 1984 partnership return disclose *212 that Dennis and Joseph contributed capital in that year in the total amount of $ 78,103.84 (50 percent by each). However, there was no evidence that the individual assets on the Gruse Enterprises partnership return were transferred from Dennis or Joseph to the entity known as Gruse Enterprises. There was no equipment, real estate, or buildings in the name of Gruse Enterprises during the years in issue. At trial, petitioners represented that Gruse Enterprises was a partnership. However, petitioners' attorney prepared no written partnership agreement. We find that Gruse Enterprises was conducted as a joint venture for tax purposes with each petitioner sharing equally in the joint venture losses claimed on the 1984 through 1986 partnership returns. The sole income reported on the partnership returns of Gruse Enterprises during the taxable years was $ 165.00 in 1984; $ 0.00 in 1985; and $ 115.00 in 1986. The reported partnership income was from the sales of "Grulers" (brushed aluminum coolant expansion tanks) built and sold by Dennis J. Gruse. Gruse Enterprises held no separate checking or savings bank accounts in the taxable years 1984, 1985, or 1986. The parties agree that *213 the following items of income and expenses were reported on the partnership returns: Year
Income
Expenses
Depreciation
Taxes
(Loss)
1984
$ 165
$  5,786
$  2,465
-0-
($ 8,086)
1985
-0-
8,326
5,756
-0-
(14,082)
1986
115
25,557
8,711
$ 296
(34,449)
TOTAL
$ 280
$ 39,669
$ 16,932
$ 296 ($ 56,617)
On Schedules C attached to their income tax returns for years 1984, 1985, and 1986, petitioners deducted the following amounts as their share of Gruse Enterprises losses: Petitioner
1984
1985
1986
Joseph Gruse
$ 4,043
$ 7,041
$ 17,224.50
Dennis Gruse and
Debra L. Campbell,
4,043
---  ---  f.k.a. Debra L. Gruse
Dennis Gruse
---
7,041
17,224.50
In addition, petitioners claimed investment tax credits on Forms 3468 related to property used in their automobile restoration and farming activities for years 1984 and 1985. Both Dennis and Joseph maintained separate records for the auto restoration and farming activities, which reflect the following breakdown of the joint venture income and expenses: Automobile Restoration
Total
Profit/
Year
Income
Expenses
Depreciation
(Loss)
1984
$ 165
$  2,691
$  2,465
($ 4,991)
1985
-0-  4,703  4,930
($ 9,633)
1986
115  7,578  4,930
($ 12,393)
TOTAL
$ 280
$ 14,972
$ 12,325
($ 27,017)
*214 Farming
Total
Year
Income
Expenses
Depreciation
Taxes
(Losses)
1984
-0-
$  3,095
-0-
-0-
($ 3,095)
1985
-0- 3,623
$   826
-0-
(4,449)
1986
-0- 17,979
3,781
$ 296
(22,056)
TOTAL
-0-
$ 24,697
$ 4,607
$ 296
($ 29,600)
Automobile Restoration Activity
Dennis Gruse has an engineering background. He received a degree in engineering from Purdue University, West Lafayette, Indiana, in 1977. From 1977 to 1987, Dennis worked full-time as a mechanical design engineer with J. I. Case Company. Since 1987, he has been chief engineer of J.R.B. Company in Akron, Ohio, approximately 359 miles from Rosedale. During the years in issue, Dennis reported income from wages, interest, and distributions, totaling $ 38,481.15, $ 32,384.82, and $ 32,070.28, respectively. When Dennis was in high school during the early 1970s, he developed an interest in custom-built cars and streetrods, which are automobiles built prior to 1948. His interest in cars continued. Dennis purchased for personal use a 1967 Nova Super Sport and a 1969 Corvette. He joined a local streetrod club, "Wabash Valley Street Scene," and became *215 a member of the "Indiana Streetrod Association" and "National Streetrod Association." Dennis and his family frequently attended streetrod runs and shows. Since Dennis was a young boy, he and his father discussed starting a business together. In 1982, Dennis purchased and completely rebuilt, with his father's assistance, his first streetrod, a 1932 Ford. He believed that streetrodding was "a rapidly growing sport" with a potential market for parts and custom-built streetrods. Dennis was responsible for operation of the automobile restoration activity. Prior to entering the automobile restoration activity, Dennis discussed with several machine shop owners, independent businessmen, a private industry counsel, and his tax preparer/attorney about choice of Gruse Enterprises' business format. None discussed the economic feasibility or profitability of an automobile restoration operation. Dennis made no attempt to analyze the costs, risks, and returns of operating the venture or calculate the break-even point above which he would begin to make a profit. Dennis originally conducted the automobile restoration activity from a 40-by-60 foot concrete machine shop located on his father's *216 acreage near Rosedale. He used his father's tools, equipment, and work bench from the machine shop in the venture. In July 1984, a smaller building with overhead doors, lower ceiling, phase-three power, and internal office was purchased for $ 22,500 in Montezuma, Indiana, (Montezuma Building) twelve miles north of Rosedale. Joseph provided the capital to purchase the new facility. The Montezuma building was purchased because it was more energy efficient; had an office; and had phase-three power which cost less and reduced equipment deterioration. A majority of the Rosedale machine shop equipment, tools, and workbench was transferred to the new facility. Dennis testified that he spent evenings during the week and weekends purchasing and rebuilding streetrods. During the years in issue, Dennis purchased a 1937 Chrysler Imperial and a 1939 Chevy pickup truck; however, he only restored the 1937 Chrysler Imperial. Dennis also designed and produced custom-built streetrod parts including chrome nut and manifold covers, blower drive systems and Grulers. The custom-made parts were always installed on his automobiles. Dennis spent time marketing the new streetrod parts. He had the *217 Gruler displayed in an automobile parts shop in Terre Haute, Indiana, located eight miles from Rosedale. During weekends, Dennis travelled with his 1932 Ford or 1937 Chrysler Imperial to various streetrod shows, runs, and swap meets. At these events, he would generally offer his automobile parts for sale by either displaying them near his streetrod or walking through the event with a part in his hand. During the years 1984, 1985, and 1986, the Grulers were the only streetrod parts sold by Dennis for Gruse Enterprises. Dennis never sold any automobiles. During the years in issue, Dennis did not list Gruse Enterprises' automobile restoration activity in any telephone directory or had printed letterhead, invoices, or business cards. Dennis did not operate with set business hours. Neither Rosedale machine shop or Montezuma building had a billboard indicating an automobile restoration business was in operation. When the Gruler was sold, there was no label or engraving on the part indicating it was produced by Gruse Enterprises. Dennis maintained a single entry ledger for his auto restoration activity. He kept receipts for the automobile restoration operation showing income received *218 and expenses for advertising, dues, gas, newspaper, licenses, utilities and electricity, travel and entertainment, labor, materials, repairs, insurance, and office expenses. During 1985 and 1986, the labor expense claimed on the Gruse Enterprise partnership returns in the respective amounts of $ 2,460 and $ 2,947 included the sums of $ 200 per month allegedly paid to Carly Gruse, petitioner's daughter. Carly was born on October 9, 1972 and lived with her mother in 1985 after the August 1985, divorce and for approximately 10 months during 1986. While carrying on the activity, Dennis never kept graphs or charts which would track expenses and income; never used the records to form the basis for any projection or forecasts; never had a budget analysis done; and did not keep a separate bank account. At the end of each year of operation, he gave all his records to his attorney to prepare Federal income tax and Partnership returns. Farming Activity
Joseph Gruse (Joseph) worked full-time as a maintenance man for Eli Lilly & Company from 1971 until his retirement in March 1986. For taxable years 1984 through 1986, he reported income from wages, interest, and retirement plan *219 totaling $ 38,289.69, $ 38,868.07, and $ 28,282.44, respectively. Joseph has had an interest in farming since his father operated a 195 acre grain farm in the 1940s near Clinton, Indiana, approximately seven miles from Rosedale. This farm remained in the Gruse family with a brother, Valentine Gruse (Valentine), having acquired it. During the 1970s, Valentine suffered considerable financial and health problems making it difficult to operate the farm. At first, Joseph assisted his brother with payments of farm bills and loans. By the early 1980s, Valentine's health worsened, leaving Joseph in control of the farm's operation. Joseph wanted "to keep the farm in the family." During the years in issue, Valentine continued to be sole owner of the farm. Between 1984 and 1986, Joseph was personally involved with all aspects of the farming activity. He worked an average of 30 hours during the week and weekends doing chores and general maintenance on the property and equipment. His chores consisted of repairing equipment, building, and fences; purchasing new and used equipment at farm auctions; driving into town to purchase seed or farm materials; and planting and harvesting soybean *220 and corn crops. Joseph maintained records of the farming activity in a single entry ledger. For years 1984, 1985, and 1986, the activity expenses included depreciation, insurance, license, repairs, parts, labor, heat and utilities, fuel, office supplies, fertilizer, delivery, seed, automobile, and legal expenses. Joseph purchased farm equipment and machinery including a combine, tractor, plow, and hoe. In 1985, he also purchased a drilling rig for $ 1,600, expecting to operate a well drilling operation with the farming activity. Joseph acquired a license from the Department of Natural Resources. However, he had no customers for years 1985 and 1986. Joseph did not open a separate checking account for the farming activity. He used his personal checking account or cash to pay all expenses for the farm. During the years in issue, Joseph never paid rent for use of the farm. Furthermore, Joseph never sold crops during the years in issue even though the total farming expenses claimed increased to $ 17,979 in 1986 from the amounts of $ 3,095 and $ 3,623 in the respective 1984 and 1985 years. Much of the increased expense was due to 1986 "supplies" expense claimed on the Gruse Enterprises *221 partnership return in the amount of $ 11,341. No supplies expense was claimed in the previous two years. Joseph harvested crops in 1986, but the crops were not sold, but remained in storage and had not been sold as of March 1989. In his notice of deficiency, respondent disallowed the net losses claimed by petitioners for Gruse Enterprises' automobile restoration and farming operations for years 1984 through 1986. Additionally, respondent increased petitioners' 1984 and 1985 tax liability by $ 736 and $ 330, respectively, by disallowing investment tax credits claimed with respect to equipment purchased or used in those years. Finally, respondent determined that petitioners' underpayment of tax liability in each year in issue was due to negligent or intentional disregard of rules and regulations and imposed additions to tax pursuant to section 6653(a). OPINION The first issue to be decided is whether petitioners are entitled to deduct claimed expenses and depreciation with respect to their involvement in Gruse Enterprises' activities, i.e., automobile restoration and farming. Section 183(a) provides that "if (an) activity is not engaged in for profit, no deduction attributable *222 to such activity shall be allowed under this chapter except as provided in this section." An "activity not engaged in for profit" is defined in section 183(c) as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." If an activity is not engaged in for profit, section 183(b)(1) allows only those deductions which are not dependent upon a profit objective. Section 183(b)(2) allows all other deductions which would be allowable if the activity was engaged in for profit, but only to the extent that gross income from the activity exceeds the deductions allowable under section 183(b)(1). Deductions are allowable under section 162 for expenses of carrying on an activity which constitutes the taxpayer's trade or business if those expenses are ordinary and necessary to the conduct of the trade or business. Section 212 allows the taxpayer to deduct expenses incurred in connection with that activity engaged in for the management, conservation, or maintenance of property held for the production of income. In order to deduct expenses of an activity under either section 162 or 212, the *223 taxpayer must show that he engaged in the activity with an actual and honest objective of making a profit. Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. (1983). Although a reasonable expectation of a profit is not required, the actual and honest objective of making a profit must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Beck v. Commissioner, 85 T.C. 557, 569 (1985). "Profit" in this context means economic profit, independent of tax savings. Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, 91 T.C. at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). The existence of the required profit objective is usually determined by examining the objective of the activity which has control over the activity *224 under scrutiny. Brannen v. Commissioner, 78 T.C. 471, 504-505 (1982), affd. 722 F.2d 695 (11th Cir. 1984). Thus, the existence of a profit objective of a partnership is determined at the partnership level. Taube v. Commissioner, 88 T.C. 464, 478 (1987); Brannen v. Commissioner, supra.Such analysis is appropriate because each partner is really engaged in the business of his partnership and, therefore, it is the partnership which exercises control over the activity under scrutiny. Brannen v. Commissioner, supra; Butler v. Commissioner, 36 T.C. 1097, 1106-1107 (1961). Similarly, the existence of a profit objective of a joint venture is generally determined at the joint venture level. Drobny v. Commissioner, 86 T.C. at 1342; Grove v. Commissioner, 54 T.C. 799, 801-805 (1970). Here, petitioners bear the burden of proving the joint venture possessed the required profit objective. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). In making the determination, we give greater weight to the objective facts than to mere statements *225 of intent. Sec. 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Surloff v. Commissioner, 81 T.C. 210, 233 (1983). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be used in determining the existence of a taxpayer's profit objective. These factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. Not all these factors are applicable in every case and no one factor is conclusive in making this determination. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); *226 Fuchs v. Commissioner, 83 T.C. 79, 98 (1984). For tax purposes, petitioners considered Gruse Enterprises' automobile restoration and farming activities as one business. They combined the losses from these activities on Gruse Enterprises' partnership returns for the years 1984 through 1986. However, from their testimony and conduct, petitioners operated the activities as two separate businesses. During the years in issue, separate records were maintained for each activity by petitioner Dennis Gruse who primarily operated the automobile restoration activity and Joseph Gruse who operated the farming activity. After reviewing the entire record, we conclude that Gruse Enterprises was engaged in two separate and distinct activities, an automobile restoration activity and a farming activity. Each of these activities should be separately measured against the standard of section 183 for the purpose of determining whether petitioners had the requisite objective of making a profit. See Givens v. Commissioner, T.C. Memo. 1989-529. We first consider whether petitioners' venture of automobile restoration was an activity not engaged in for profit during the *227 years 1984-1986. During the taxable years in issue, Dennis did not conduct the automobile restoration in a businesslike manner. Sec. 1.183-2(b)(1), Income Tax Regs. Prior to entering the activity, he did not carefully investigate or analyze the costs, risks, and returns of operating the activity or calculate the financial break-even point of expected returns and expenses. Neither petitioner offered specific evidence that he consulted experts in automobile restoration, other than a vague reference to discussions with several businessmen and petitioners' tax preparer/attorney about the formation of Gruse Enterprises in January 1984. The fact that neither Dennis nor Joseph conducted any profitability study or consulted experts reflect petitioners' casual attitude toward the financial aspect of Gruse Enterprises' automobile restoration activity. Dennis did maintain a separate ledger for the automobile restoration expense. However, petitioners were not able to identify on cross-examination the purchases. Petitioners testified that all receipts and records were given annually to their tax preparer/attorney to assist in filing their income tax and partnership returns. There was no *228 showing that the records were kept for the purposes of cutting expenses, increasing profits, and evaluating the overall performance of the activity's operation. Golanty v. Commissioner, 72 T.C. at 430; Engdahl v. Commissioner, 72 T.C. 659, 667 (1979). Without periodic assessment of the automobile restoration's total expenditures and income, petitioners could hardly know the financial status of their activity or identify potential weaknesses in the financial performances of the activity. It is undisputed that for the years in issue, expenses (apart from depreciation) directly related to the automobile restoration activity substantially exceeded its income. If petitioners had an objective to making a profit, they would have reevaluated or redirected the activity by the beginning of 1986. They would have taken action to minimize the activity's losses and increase the profit potential. In fact, there was no indication of a plan or change in their methods of operation in an effort to increase profitability. During the years in issue Dennis did not maintain a separate bank account and undertook no action to advertise the automobile restoration activity. *229 The amount of income earned reflect minimal efforts to develop a business reputation or clientele for the activity. Petitioners continue to engage in the automobile restoration activity, even after three years of sizeable losses. The lack of plan and changes suggests that petitioners were content to deduct the losses, claim the tax credits, and were not serious in operating the automobile restoration activity for profit. Petitioners testified that in late 1983, they "were both tired * * * of [their] jobs, [their] full-time employment, and were looking for something else to do." Prior to entering the automobile restoration activity, petitioners had limited experience with rebuilding streetrods and no experience designing and producing custom automobile parts. However, there were no indications that the experience of either petitioner included operating an automobile restoration business. Additionally, petitioners did not study accepted business and economic practices or consult with those who were experts or businessmen in the field prior to engaging in the activity. During the years in issue, they never consulted or employed experts in an attempt to make the operation economically *230 profitable. The absence of adequate preparation, investigation, and reliance on experts is indicative of petitioners' lack of a profit objective. Sec. 1.183-2(b)(2), Income Tax Regs.
Dennis testified that he devoted a substantial amount of personal time and effort to conduct the automobile restoration activity, which may indicate an intention to derive a profit. Sec. 1.183-2(b)(3), Income Tax Regs. However, we note that the financing of this activity's large losses required substantial outside income and that both Dennis and Joseph (until his retirement in March 1986) continued to work full-time at their respective jobs. Moreover, Gruse Enterprises reported little or no income from the automobile restoration activity during the years in issue. It is difficult to imagine that so much time and effort was spent with an activity resulting in only $ 280 income earned over a 3-year period. During the years 1984, 1985, and 1986, Gruse Enterprises restored only one streetrod, a 1937 Chrysler Imperial, and sold only 8 to 10 Grulers. There is no evidence that the joint venture could have expected the assets used in the automobile restoration activity to increase in value. Sec. 1.183-2(b)(4), *231 Income Tax Regs. Petitioners owned all the automobiles, tools, buildings, and equipment used in the automobile restoration operation. No evidence was offered to show that their automobiles (other than a 1939 Chevy pickup truck), tools, buildings, and equipment were transferred to Gruse Enterprises or would increase in value. Therefore, this factor does not support petitioners' contention that they had the objective of making a profit in this activity. Another factor that weighs against petitioners is the history of losses with respect to the automobile restoration activity. In the taxable years 1984 through 1986, petitioners incurred net losses from the automobile restoration activity in amounts ranging from $ 4,991 to $ 12,393. Although losses in the initial years of an activity are not necessarily fatal to the section 183 determination, the ultimate goal of an activity engaged in for profit must be to realize a net profit on the activity so as to recoup losses sustained previously. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Petitioners conducted no prior investigation or determination of the business *232 viability, economic feasibility, and profit making potential of the automobile restoration activity. Furthermore, they made no changes in the activity's operations over the 3-year period that might have supported an intention to improve profitability of the auto restoration activity. The losses reported from this activity were not attributable to unforeseen or fortuitous circumstances beyond petitioners' control. Petitioners asserted at trial that a profit was earned from the automobile restoration activity in years following 1986. However, no evidence was presented corroborating petitioners' self-serving statements. The failure of a party to introduce evidence within his possession which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). During the years in issue, petitioners derived approximately $ 27,012 in deductions from Gruse Enterprises' automobile restoration activity. While petitioners were not vastly wealthy, their economic status was such that they could afford to sustain *233 the activity's losses and at the same time benefit from the resulting tax advantages. Dennis also received personal and recreational gratification from operating the automobile restoration activity. He has been interested in streetrods and custom-built automobiles since the early 1970s. Dennis owned several classic cars and belonged to several streetrod organizations prior to forming Gruse Enterprises. During the years in issue, he and his family socialized with friends at streetrod runs, shows, and swap meets. Dennis testified that he attended the events to market and sell custom-made automobile parts. However, as previously discussed, Dennis sold no rebuilt automobiles in the years in issue. We believe that when Dennis attended these events, he derived personal satisfaction in showing his streetrod. The presence of personal or recreational elements along with substantial tax benefits indicate that the automobile restoration activity were not engaged in for profit. Based on the record as a whole, we conclude that Dennis and Joseph, operating under the joint venture name of Gruse Enterprises, did not engage in the automobile restoration activity with an actual and honest *234 objective of making a profit during the years 1984-1986. Accordingly, losses claimed from this activity are not deductible. We next consider whether the farming venture managed by Joseph during the years 1984-1986 was an activity not engaged in for profit. We find that the objective facts of this case do not support petitioners' contention that they engaged in the joint venture of farming with the requisite profit objective. First, Joseph did not operate the farming activity in a businesslike manner. Sec. 1.183-2(b)(1), Income Tax Regs. During the years in issue, Joseph did maintain a general ledger of the farming expenses. However, no evidence was presented indicating that the records were kept to evaluate the farming operations' overall performance. Joseph did not maintain a balance sheet, budget, or attempt to determine the financial breakeven-point of the farm's operation. Nor did he open a separate checking or bank account for the farming activity. Second, neither petitioner has ever operated an activity similar to farming, although in 1985 and 1986, Joseph did engage in another activity not related to farming. He purchased a $ 1,600 well drilling rig. Although petitioners *235 deducted drill rig depreciation and claimed an investment tax credit on their joint venture returns for 1985 and 1986, no income was reported from the activity in these years. Accordingly, the facts relating to similar or dissimilar activities, section 1.183-2(b)(5), Income Tax Regs., do not support petitioners' contention that they had the requisite objective of making a profit. Third, petitioners had no income and sustained sizeable net losses from their farming activity. The activity's net losses ranged from $ 3,095 in 1984 to $ 22,056 in 1986. There is no evidence that the farming losses did not continue after 1986. Sec. 1.183-2(b)(6) and (7), Income Tax Regs. Furthermore, Joseph did not indicate any changes were made in the activity during the period 1984-1986 that might have supported an intent to improve the farm's profitability and apparently he has no plans to discontinue the farming activity. A record of substantial losses without change in mode of operation over many years and the unlikelihood of achieving a profitable operation are persuasive evidence that the taxpayers did not have the objective to make a profit. Golanty v. Commissioner, 72 T.C. at 427; *236 Bessenyey v. Commissioner, 45 T.C. at 274. Finally, the presence of personal motives and pleasure in operating the farming activity weighs against petitioners. Sec. 1.183-2(b)(6), Income Tax Regs. At trial, Joseph admitted he enjoyed farming. He also had a personal motive for operating the farming activity. He had been assisting his brother with the family farm prior to starting Gruse Enterprises' joint venture. Joseph's overriding concern was to keep the farm in the family at any cost. This conclusion is supported by his financial commitment and eventual assumption of control over his brother's farm, and the continued operation of the farming activity after years of large losses. Petitioners have not sustained their burden of proving that they had the requisite objective of making a profit from the farming activity. Abramson v. Commissioner, 86 T.C. at 371. Respondent is sustained on this issue. The next issue concerning petitioners' entitlement to investment tax credit attributable to Gruse Enterprises' automobile restoration and farming activities requires little discussion. An investment tax credit requires that a property be used in a *237 trade or business or held for the production of income. Sections 38(a), 48(a)(1)(A), 167(a). Our determination that Gruse Enterprises' automobile restoration and farming activities were not engaged in with the objective of making a profit is thus dispositive of this issue. Finoli v. Commissioner, 86 T.C. 697, 744-745 (1986). Respondent is sustained on this issue. The final issue to be decided is whether petitioners are liable for the additions to tax pursuant to section 6653(a). Section 6653(a)(1) as to 1984 and 1985 and section 6653(a)(1)(A) as to 1986 impose a 5 percent calculation to tax on any underpayment of tax due to negligence or intentional disregard of rules and regulations. Additionally, section 6653(a)(2) as to 1984 and 1985 and section 6653(a)(1)(B) as to 1986 provide for an addition to tax in an amount equal to 50 percent of the interest due on that portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Negligence is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985). *238 Petitioners have the burden of proof. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). When this Court has found that a taxpayer's activity under section 183 was not engaged in for profit, it has also approved respondent's determination, in appropriate cases, that additions to tax for negligence should be imposed. In such cases, the taxpayer has either maintained inadequate activity records or has attempted to deduct personal expenses on his claimed business activity records. See Larson v. Commissioner, T.C. Memo. 1986-542 (Personal expenses deducted included cost of trimming trees, house sitting, dog food, and personal residence insurance); Faulkner v. Commissioner, T.C. Memo. 1985-536 (Inadequate records maintained with respect to both a horse-breeding operation and a fireplace business); Sealy v. Commissioner, T.C. Memo. 1980-7 (Lack of account books or ledgers in horse farming operation). In this case, we find the records of both Dennis and Joseph do not adequately disclose the expenses incurred in the petitioners' two activities. Furthermore, Dennis' claim of a $ 200 a month wage deduction *239 during 1985 and 1986 for his 13-14 year old daughter is clearly a nondeductible personal expense. There is no evidence that Carly performed services for Dennis on his business activity premises or that she was paid the money claimed as a deduction. Carly's mother testified that Carly received no money from Dennis. Dennis admitted on cross-examination that the money was not paid to Carly, but was in his possession, "in one of (our) safes," intended to be used for Carly's college education. We sustain respondent on this issue. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sections 6653(a)(1) and (a)(2) have been redesignated for taxable year 1986 as sections 6653(a)(1)(A) and (B), respectively. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1503(a), 100 Stat. 2742. * 50 percent of the interest due on the entire underpayment↩