HYMAN PODELL AND HENRIETTA PODELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4554–68.    Filed December 9, 1970.

Hyman Podell, pro se.
*Michael A. Menillo*, for the respondent.

QUEALY, *Judge:* The respondent determined deficiencies in the Federal income tax due from the petitioner as follows:

| Year | Deficiency |
|---|---|
| 1964 | $1,277.99 |
| 1965 | 506.48 |

The only question presented for decision is whether amounts received by petitioner on the sale of certain real estate are taxable as ordinary income under section 61 [1] or as capital gain.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Hyman Podell and Henrietta Podell,[2] the petitioners, are husband and wife. At the time the petition herein was filed, petitioners' legal residence was in Brooklyn, New York. Petitioners filed joint income

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Henrietta Podell is a party to this proceeding by virtue of the joint returns filed by the petitioners for the taxable years 1964 and 1965.

tax returns for the calendar years 1964 and 1965 with the district director of internal revenue at New York, N.Y.

During each of the years 1964 and 1965, Hyman Podell (hereinafter referred to as petitioner) entered into an oral agreement with Mr. Cain Young (hereinafter referred to as Young), a real estate operator located in Brooklyn, New York, whereby petitioner advanced various amounts of money to Young to be used for the purchase and renovation of certain residential real estate. Young was to provide the actual management for the project. Petitioner entered into the agreement with Young in each of the years in the hope that the renovation of the buildings purchased pursuant to the agreement would help in the rehabilitation of certain slum areas in Brooklyn.

Pursuant to the aforesaid agreement, Young purchased various buildings in the Bedford-Stuyvesant, Crown Heights, and other areas of Brooklyn, New York. Young renovated the buildings, refinanced them, and sold them at the best possible price obtainable. In 1964, petitioner and Young purchased, renovated, and sold nine buildings. In 1965, petitioner and Young purchased, renovated, and sold five buildings. In other years, the number was less. The aforesaid activities constituted only a portion of the total activities carried on by Young.

Young held the aforementioned buildings for sale in the ordinary course of business. In addition, petitioner and Young shared equally in the profit or loss on the sale of each of the buildings. In 1964, petitioner's share of the net gain realized from his agreement with Young was $4,198.03. In 1965, petitioner's share of the net gain realized from his agreement with Young was $2,903.41.

Petitioner is engaged in the full-time practice of law, and he has paid regular taxes on his earnings as an attorney. He did not actively participate in the purchase, the renovation, or the sale of the real estate.

ULTIMATE FINDING OF FACT

The oral agreements entered into between petitioner and Young in 1964 and 1965 established a joint venture for the purpose of purchasing, renovating, and selling certain residential real estate in the ordinary course of trade or business.

OPINION

In this case, during each of the years 1964 and 1965, petitioner entered into an oral agreement with Young for the purchase, renovation, and sale of certain residential real estate. Profit and loss realized on the sale of such property was shared equally by petitioner and Young.

Section 1221, which defines "capital asset," provides in pertinent part:

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, *or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;* [Emphasis supplied.]

Petitioner maintains that the properties sold were capital assets and that any gains on those sales should be taxed as capital gains.

Respondent argues that the oral agreements between petitioner and Young established a partnership or joint venture for the purposes of purchasing, renovating, and selling real estate in the ordinary course of business, and that consequently, the gains arose from the sale of noncapital assets and are to be treated as ordinary income.

We have found as an ultimate fact that the agreement between petitioner and Young gave rise to a joint venture. Under section 761 (a), a joint venture is included within the definition of a "partnership" for purposes of the internal revenue laws (henceforth in this opinion, the terms are used interchangeably). Section 761(a) provides:

(a) PARTNERSHIP.—For purposes of this subtitle, the term "partnership" *includes* a syndicate, group, pool, *joint venture* or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title [subtitle], a corporation or a trust or estate. * * * [Emphasis supplied.]

A joint venture has been defined as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Haley* v. *Commissioner*, 203 F. 2d 815, 818 (C.A. 5, 1953); see also *Aiken Mills* v. *United States*, 144 F. 2d 23 (C.A. 4, 1944); and *Tompkins* v. *Commissioner*, 97 F. 2d 396 (C.A. 4, 1938). See also *Clark* v. *Sidway*, 142 U.S. 682 (1892), and 6 Mertens, Law of Federal Income Taxation, sec. 3.505, p. 31.

The elements of a joint venture are: (a) A contract (express or implied) showing that it was the intent of the parties that a business venture be established; (b) an agreement for joint control and proprietorship; (c) a contribution of money, property, and/or services by the prospective joint venturers; and (d) a sharing of profits, but not necessarily of losses (although some jurisdictions require that there be a sharing of losses). *Flanders* v. *United States*, 172 F. Supp. 935 (N.D. Cal. 1959), and *Tate* v. *Knox*, 131 F. Supp. 514 (D. Minn. 1955). See also *Levine* v. *Personnel Institute*, 138 N.Y.S. 2d 243 (1954), affd. 158 N.Y.S. 2d 740 (1956).

In many respects, the concept of joint venture is similar to the concept of partnership, and many of the principles of partnership law

are applicable to joint ventures. *Blackner* v. *McDermott*, 176 F. 2d 498 (C.A. 10, 1949). A primary distinction between the two concepts is that a joint venture is generally established for a single business venture (even though the business of managing the venture to a successful conclusion may continue for a number of years) while a partnership is formed to carry on a business for profit over a long period of time. *Fishback* v. *United States*, 215 F. Supp. 621 (D. S. Dak. 1963).

It is undisputed that petitioner and Young joined in an agreement establishing a joint business venture to acquire, improve, and resell residential property at a profit, and it is immaterial that the petitioner was motivated, in part, by social objectives. There was a contribution to the business of property, services, or money by each of the parties involved. Petitioner and Young also agreed to share equally in any resulting gain or loss.

The fact that petitioner did not exercise as much managerial control over the day-to-day activities relating to the purchase, renovation, and sale of the real estate as Young is not sufficient reason for this Court to find against the existence of a joint venture. While petitioner gave Young discretion with respect to all aspects of the purchase, renovation, and sale of the real estate in question, petitioner retained the power to approve of the steps undertaken by Young to execute their agreement through his control over his continued contributions of funds to the venture. *Fishback* v. *United States, supra;* and *Flanders* v. *United States, supra.*

The real estate acquired by the joint venture is to be considered partnership property for purposes of taxation. Section 702(a) provides, in part:

(a) GENERAL RULE.—In determining his income tax, each partner shall take into account separately *his distributive share of the partnership's—*
(1) gains and losses from sales or exchanges of capital assets held for not more than 6 months,
(2) gains and losses from sales or exchanges of capital assets held for more than 6 months,
[Emphasis supplied.]

Section 702(b) establishes the "conduit rule" for the income taxation of partnerships and provides:

(b) CHARACTER OF ITEMS CONSTITUTING DISTRIBUTIVE SHARE.—The character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share * * * shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership.

In essence, the "conduit rule" requires that for the purpose of determining the nature of an item of income, gain, loss, deduction, or credit

in the hands of the partnership before distribution or a partner (joint venturer—henceforth in this opinion the terms "partner" and "joint venturer" are used interchangeably) after distribution, the partnership is to be viewed as an entity and such items are to be characterized from the viewpoint of the partnership rather than from the viewpoint of an individual partner. Thus, the phrase "his trade or business" in section 1221(1) clearly refers to the trade or business of the partnership, despite the fact that under section 701 partnerships are not subject to income tax. It is the intent of the partnership and not that of any specific partner which is determinative in characterizing the income for purposes of taxation. *Estate of Freeland* v. *Commissioner*, 393 F. 2d 573 (C.A. 9, 1968), affirming a Memorandum Opinion of the Court, certiorari denied 393 U.S. 845 (1968); *Barham* v. *United States*, 301 F. Supp. 43 (M.D. Ga. 1969); and *Fishback* v. *United States, supra.*

The trade or business of the joint venture or partnership in this case during the years in question was the purchase, renovation, and sale of certain residential real estate irrespective of and separately from the various businesses or professions of the individual joint venturers. The real estate sold by the joint venture was held for sale to the customers of the joint venture in the ordinary course of the joint venture's business with the consequence that the residential real estate parcels were not capital assets in the hands of the joint venture. Consequently, the income realized by the joint venture on the sale of the real estate was ordinary income. Therefore, applying the "conduit rule" of section 702(b), this income remained ordinary income in the hands of the joint venturers.

The cases of *United States* v. *Rosebrook*, 318 F. 2d 316 (C.A. 9, 1963), and *Riddell* v. *Scales*, 406 F. 2d 210 (C.A. 9, 1969), which look to the purposes of the joint venturers in determining the character of the income, are readily distinguishable from the case before us. In *Rosebrook*, there was direct ownership of the property in question by the taxpayer even though her interest had been committed to a joint venture. Furthermore, the taxpayer had succeeded involuntarily to ownership of the property and participation in the joint venture through her father. In the case before us, these factors are not present. In *Riddell* v. *Scales, supra*, the joint venture as an entity was not engaged in the real estate business.

Petitioner relies heavily on *Austin* v. *Commissioner*, 263 F. 2d 460 (C.A. 9, 1959), to support his position. His reliance is without foundation. The facts of *Austin* are entirely distinguishable from the case at hand. In *Austin*, the taxpayer was an attorney who individually sold vacant lots over a period of years. He was not a participant in a

joint venture that had as its primary purpose the purchase, renovation, and sale of residential real estate to its customers in the ordinary course of its business. In the case before us, petitioner was engaged in such a joint venture, and the character of the income in his hands is determined by the character it would have had if it had remained with the joint venture. Since it would be ordinary income to the joint venture, it is ordinary income to petitioner. In short, *Austin* is irrelevant in terms of the facts of this case.

*Decision will be entered for the respondent.*

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.