KENNETH R. TERRY and BETSY R. TERRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Terry v. Commissioner
Docket No. 31259-81.
United States Tax Court
T.C. Memo 1984-442; 1984 Tax Ct. Memo LEXIS 231; 48 T.C.M. (CCH) 906; T.C.M. (RIA) 84442; August 15, 1984. *231 T realized a loss when real estate he had purchased in a joint venture was sold at a foreclosure sale. Held, since the joint venture did not hold the real estate primarily for sale to customers in the ordinary course of a trade or business, T incurred a capital loss upon its sale. Held further, T properly reported a corporate distribution of money as dividend income in 1978. A. Dean Burford, for the petitioners. James W. Lessis, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency of $9,790.87 in petitioners' 1978 Federal income tax. After concessions, the issues for decision are: 1) whether petitioners sustained an ordinary or capital loss upon the foreclosure sale of certain real property; and 2) whether petitioners *232 properly reported a corporate distribution of money as dividend income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Kenneth R. Terry (petitioner) and Betsy R. Terry, husband and wife, resided in Dallas, Texas, at the time their petition was filed. Real Estate Loss
On October 1, 1973, petitioner, a banker, and Joe P. Farina (Farina), a real estate investor, purchased a 200 acre tract of land located in Dallas County, Texas, as tenants-in-common for $948,233.50. Petitioner and Farina equally contributed to the downpayment and executed a nonrecourse promissory note in the amount of $877,106.74 for the balance of the purchase price. The note, which was secured by the property, provided for 13 annual interest payments commencing in 1974 and ending in 1986 and five annual principal payments beginning in 1982 and ending in 1986. Although neither petitioner nor Farina executed a partnership agreement, they agreed to equally share profits, losses, and expenses relating to the property. Beginning in 1976, petitioner and Farina failed to pay *233 both the required interest payments on the note and the assessed real estate taxes. On November 28, 1977, following formal demands for payment of the outstanding interest and real estate taxes, the mortgagee elected to accelerate the note, and demanded payment of principal and accrued interest by December 9, 1977. Neither petitioner nor Farina paid the outstanding balance, and the property was subsequently sold at a foreclosure sale on January 3, 1978. Petitioner received no proceeds from the sale and realized a loss of $71,617.04. At the time petitioner and Farina purchased the property, they expected a highway system adjacent to the property to open and intended to immediately resell the property thereafter. Farina was also aware of a potential buyer although a sale never occurred. While Farina made some selling efforts in the course of his real estate business, Joe P. Farina Investments Company, petitioner never contributed to these efforts. Petitioner's only other real estate holdings from 1973 to 1978 were his personal residence and a 50 percent ownership in a corporation formed with Farina which held an unrelated parcel of real estate. Corporate Distribution
*234 Petitioner received a cash distribution from Itel Corporation (Itel) in 1978 which he reported as dividend income on his 1978 Federal income tax return. Subsequently, he received notice from the corporation that 99.03 percent of the dividends were excludable because its financial statement for 1978 overstated earnings and profits. OPINION Issue 1. Characterization of Real Estate Loss
Petitioner incurred a loss of $71,617.04 when real estate which he held in a joint venture was sold at a foreclosure sale. Petitioner contends he is entitled to ordinary loss from the sale of the property because the joint venture [1] held the real estate primarily for sale to customers in the ordinary course of its business. Respondent contends petitioner realized a capital loss because the activities of neither petitioner nor the joint venture constituted a trade or business. We agree with respondent. *235 The entity level characterization of a partner's distributive share of partnership items requires us to characterize the loss at the joint venture level. McManus v. Commissioner,65 T.C. 197 (1975), affd. 583 F.2d 443 (9th Cir. 1978), cert. denied 440 U.S. 959 (1979); Podell v. Commissioner,55 T.C. 429 (1970). To characterize the loss, we must look to the definition of a capital asset. Section 1221 provides in pertinent part as follows: [2]
* * * the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include-- (1) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. To determine *236 whether property is held primarily for sale to customers in the ordinary course of a trade or business, the courts have identified the following factors: 1) the nature and purpose of the acquisition of the property and the duration of the ownership; 2) the extent and nature of the taxpayer's efforts to sell the property; 3) the number, extent, continuity, and substantiality of the sales; 4) the extent of subdividing, developing, and advertising to increase sales; 5) the use of a business office for the sale of the property; 6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and 7) the time and effort the taxpayer habitually devoted to the sales. United States v. Winthrop,417 F.2d 905, 910 (5th Cir. 1969). The cases regard the frequency and substantiality of sales as the most important factor. Biedenharn Realty Co. v. United States,526 F.2d 409, 416 (5th Cir. 1976). The aforementioned factors do not provide an independent definition of a capital asset but rather guide us in identifying the requirements of the statutory definition. Suburban Realty Company v. United States,615 F.2d 171, 178 (5th Cir. 1980). *237 Thus, we look to the seven Winthrop factors to help us decide whether: 1) the joint venture held the property primarily for sale to customers; and 2) the joint venture's activities constituted a trade or business, since the sale must have been made in the ordinary course thereof. Buono v. Commissioner,74 T.C. 187 (1980). We must first determine whether the joint venture held the real estate "principally" for sale to customers, Malat v. Riddell,383 U.S. 569, 572 (1966), at the time of the sale. Eline Realty Co. v. Commissioner,35 T.C. 1, 5 (1960). Based on all the facts and circumstances, we conclude the joint venture did hold the property principally for sale when the foreclosure sale occurred. Petitioner and Farina entered the joint venture intending to immediately resell the property after they purchased it. This expectation of a quick sale was reasonable given the existence of a potential buyer and the opening of an adjacent highway. A declining real estate market, however, precluded the joint venture from selling the property. Petitioner testified he and Farina continued to hold the land "with the idea that something *238 would develop as far as a sale [was] concerned." We are thus convinced that until the foreclosure sale occurred, the joint venture held the property for sale. Having found the joint venture held the property with the intention of reselling it, we now must decide whether the property was held primarily for sale in the ordinary course of business. Howell v. Commissioner,57 T.C. 546, 555 (1972). Our inquiry thus turns to whether the joint venture's activities rose to the level of a trade or business. Buono v. Commissioner,supra.
Based on the factors set forth in United States v. Winthrop,supra, we conclude the activities of the joint venture do not constitute a trade or business. As noted, the frequency and substantiality of sales is considered particularly relevant. The joint venture, however, never sold a single piece of property. The sale of the property occurred only after the mortgagee accelerated the note and sold the property at a foreclosure sale. In addition, the joint venture's failure to subdivide and develop the property suggests the absence of a trade or business. The length of the holding period *239 (4-1/2 years) is also evidence that no trade or business existed. In considering the extent and nature of the joint venture's efforts to sell the property, including advertising, we note petitioner testified he contributed no time to the sale of the real estate. Although Farina appeared to have made some effort towards the sale of the property, his efforts are insufficient to establish a trade or business on the part of the joint venture. Petitioner, relying upon Coffey v. United States,333 F.2d 945 (10th Cir. 1964), argues that his holding of the land in a joint venture with a real estate dealer requires us to characterize him as a dealer also. We disagree. Coffey only provides that the activities of a joint venturer carried out in furtherance of the joint venture may be attributed to the joint venture or fellow joint venturer. The activities relating to Farina's other real estate holdings are thus not relevant for our determination here. Accordingly, we hold that the property constituted a capital asset, and petitioner, therefore, incurred a capital loss. Issue 2. Reporting of Corporate Distribution
The second issue for decision is whether petitioner *240 erroneously reported a corporate distribution of money received in 1978 as a dividend. Petitioner argues Itel, the distributing corporation, over-reported its 1978 earnings and profits. Petitioner's only evidence was a letter from the corporation providing that financial statements for 1978 may have overstated earnings and profits for that year. In view of the evidence presented, we are unable to conclude petitioner has sustained his burden of proof. Rule 142(a). Accordingly, we hold for the respondent on this issue. [3]
To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. We do not decide the question of whether petitioner and Farina were coowners of the property or engaged in a partnership or joint venture. Our decision would not change regardless of whether we treat their relationship as a tenancy-in-common, a joint venture, or a partnership. For purposes of this discussion, we will assume a joint venture existed.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the year in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioner asks for costs and attorney's fees. This Court is without statutory authority to award costs or attorney's fees to petitioners in this case. McQuiston v. Commissioner,78 T.C. 807 (1982), affd. without published opinion 711 F.2d 1064↩ (9th Cir. 1983).