VICTOR HARDER AND MARGARET HARDER, DECEASED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harder v. Commissioner
Docket No. 29543-84
United States Tax Court
T.C. Memo 1990-371; 1990 Tax Ct. Memo LEXIS 393; 60 T.C.M. (CCH) 179; T.C.M. (RIA) 90371; July 23, 1990, Filed Harder v. C.I.R., 851 F.2d 360, 1988 U.S. App. LEXIS 8771 (9th Cir., 1988)
*393 Decision will be entered under Rule 155. James H. Watkins, for the petitioners. Peter Bakutes, for the respondent. KORNER, Judge. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION In his notice of deficiency, respondent determined that Victor and Margaret Harder were liable for deficiencies and an addition to tax as follows: Addition to Tax Year
Deficiency
Section 6653(a) [1]
1979
$ 61,082
$ 3,054
1980
2,304
115
*394 After concessions, [2] the issues remaining for decision are whether, during tax years 1979 and 1980: (i) income from the sale of lots constituted ordinary income to petitioners; (ii) petitioner is liable for self-employment tax on his earnings; and (iii) petitioners are liable for the section 6653(a) addition to tax for negligence and/or intentional disregard of the rules and regulations. Most of the facts have been stipulated *395 and are so found. The stipulation of facts and exhibits are incorporated by this reference. For convenience, our Findings of Fact and Opinion are combined. Margaret and Victor Harder resided in Fresno, California, at the time they filed their petition. They filed joint Federal income tax returns for tax years 1979 and 1980. On April 14, 1977, Victor Harder ("petitioner") entered into a written agreement for the purchase of approximately 14 acres of real property in Sanger, California (the Parcel). The contract was contingent upon receiving final approval from the City of Sanger for annexation and subdivision of the Parcel into lots of 6,000 square feet. Paul Bonander acted as petitioner's agent during the purchase of the Parcel. Bonander was a real estate broker licensed by the State of California. Bonander waived his commission in exchange for a one-half share of the profits resulting from annexation, subdivision, development, and improvement of the Parcel, as well as the commissions that would result from the eventual sale of the future lots. On May 16, 1977, petitioner and Bonander entered into an agreement which stated: 1. Victor Harder is to supply funds *396 to purchase and subdivide said property. 2. Paul Bonander is to obtain governmental imposed requirements for the subdivision, i.e., writing deposit; putting property in escrow; obtaining city annexation; obtaining engineer to develop subdivision map; getting subdivision approval from Sanger City, Fresno County, and the State of California if required; getting estimates on the cost of subdivision including roads, sewage, water, gas, electricity, and phone, etc. and selling said lots.
Petitioner's application for subdivision of the parcel was filed with the City of Sanger in late 1977, and the parcel was subsequently annexed. On December 17, 1977, a one-half interest in the title to the parcel was transferred to petitioners and the other one-half interest was transferred to Bonander and his wife. Bonander was introduced to Gary Bartel, a general contractor who was experienced in construction and had received training in architecture and in drawing house plans. Bonander then introduced Bartel to petitioner, who consulted with Bartel concerning his and Bonander's need for a contractor to build houses. On March 10, 1978, petitioner, Bonander, and Bartel formally agreed *397 to form a partnership in which they had the following enumerated responsibilities: A) Gary Bartel to: 1) draw house plans, identify which house and elevation goes on each lot, obtain city approval of house plans, estimate cost of each house, get bids from subcontractors and materials men, and oversee that each house is constructed to completion. 2) meet with Paul and Victor for discussion and approval of final decisions on major items. 3) keep records. B) Paul Bonander to: 1) obtain final subdivision approval. 2) promote, advertise, make signs and sell homes. Bonander Real Estate to get three per cent (3%) of the total sales price. This will be counted as an expense to the company before profits are considered. 3) keep records 4) meet with Gary and Victor for discussion and approval of final decisions on major items. C) Victor Harder to: 1) discuss any item of concern with Paul before discussing with others. 2) meet with Gary and Paul for discussion and approval of any major items.
After being approved as a subdivision, the parcel was officially designated Oakwood Estates Tract No. 2946. In May 1978, a parcel map detailing the boundaries of the *398 parcel was filed by the three partners with the County Recorder, Fresno County. The parcel was subdivided into 70 separate lots, with minimum lot size of 6,000 square feet and use restricted to detached, single family residences. The City of Sanger granted final approval for subdivision of the parcel on August 15, 1978. On September 7, 1978, petitioner, Bonander, and their wives secured a construction loan of $ 551,250, which, according to the loan agreement, was loaned "for the purpose of the construction of improvements consisting of all subdivision improvements (curbs, gutters, sidewalks, streets, water and sewer lines, etc.) as required by the County on [the parcel]." On September 28, 1978, petitioner, his wife, Bonander, and Bartel entered into a joint venture agreement which in most respects followed the agreement entered into by petitioner, Banander, and Bartel on March 10, 1978. Additionally, this agreement allocated the potential profit from the subdivision into three equal shares. The parties designated their joint venture Oakwood Estates Developers ("Developers"). Petitioner typically met with Bonander and Bartel once a week to discuss Oakwood Estates and regularly *399 visited the site as the property was developed and the houses were built. Developers maintained a full time sales office on the parcel to facilitate the sale of improved lots. A full-time sales agent occupied the sales office until the last parcels were sold in 1980. Developers filed a U.S. Partnership Return of Income with the Internal Revenue Service for the 1979 tax year. The 1979 partnership return reported: gross receipts of $ 2,619,804; cost of goods sold $ 1,862,277; gross profit $ 757,527; and income of $ 671,599. The $ 671,599 of income reported on the 1979 partnership return was reported as ordinary income. Petitioner's Form K-1 from Developers for 1979 shows his distributive share of 1979 income from Developers to be ordinary income in the amount of $ 223,866. On their 1979 Federal income tax return, petitioner and his wife reported $ 223,866 as ordinary income. Petitioner and his wife also reported self-employment income from Developers in the amount of $ 223,866 for tax year 1979. However, on October 8, 1980, petitioner and his wife filed an amended U.S. Individual Income Tax Return for 1979, in which they backed out the $ 223,866 of ordinary income for 1979 *400 and, instead, performed the following calculation: Cash received (cash draws)
$ 169,270 Cash invested
(38,394)
Net profit
130,876 Less: 60% Sec. 1202 deduction
(78,526)
Taxable income
52,350 Petitioner and his wife also amended their return to report that they received no self-employment income. Developers filed a partnership return for tax year 1980 in which it reported: gross receipts of $ 1,703,137; cost of goods sold of $ 1,425,152; gross profit of $ 277,985; and income of $ 245,283. Petitioner's Form K-1 from Developers for 1980 shows that his distributive share of income for 1980 was $ 81,761 in ordinary income. On their Federal income tax return for tax year 1980, petitioner and his wife performed the following calculation: Cash received (cash draws)
$ 133,665 Cash invested
N/A   Profit
133,665 Less: 60% Sec. 1202 deduction
(80,199)
Income reported
53,466 Petitioner and his wife failed to report any self-employment income from the Developers' activity for tax year 1980. For tax year 1979, respondent backed out the $ 52,350, which represented the taxable portion of the $ 130,876 reported gain *401 and determined that petitioner and his wife's distributive share from Developers was $ 223,866 in ordinary income. Respondent also determined that petitioner and his wife were liable for self-employment tax of $ 1,855 in 1979. For tax year 1980, respondent backed out $ 53,466, which represented the taxable portion of the reported capital gain of $ 133,665 and determined that petitioner and his wife received $ 81,761 in ordinary income from Developers in 1980. Respondent also determined that petitioner and his wife were liable for self-employment tax in the amount of $ 2,098 for 1980. The question of whether property is held for sale to customers in the ordinary course of the taxpayer's trade or business is purely factual and its resolution depends on the unique combination of its particular facts. McManus v. Commissioner, 65 T.C. 197, 211 (1975), affd. 583 F.2d 443 (9th Cir. 1978). As respondent points out on brief, this Court has used several factors in order to make this determination: (1) the nature and purpose of the acquisition of the property *402 and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales." [McManus v. Commissioner, 65 T.C. at 211, quoting from United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969).]
The character of petitioner's gain depends on the application of the above factors to Developer's actions. In Podell v. Commissioner, 55 T.C. 429 (1970), the taxpayer and an associate entered into a joint venture to acquire, improve, and develop residential property. The taxpayer did not actively participate in the daily activities of the venture. We held that the character of a partner's distributive *403 share of partnership income is determined by the character of such income in the hands of the partnership: "It is the intent of the partnership and not that of any specific partner which is determinative in characterizing the income for purposes of taxation." Podell v. Commissioner, 55 T.C. at 433. Based on the facts in this case, we must conclude that the lots were held for sale to customers in the ordinary course of Developers' business. As a condition to entering into a contract to purchase the parcel, petitioner demanded that the parcel be properly annexed and subdivided by the City. Petitioner's purpose in acquiring the parcel was to curb, gutter, build, and sell houses to the public. Furthermore, petitioner and Developers did not hold the parcel for very long; petitioner bought it in late 1977 and Developers sold the last lot in 1980, which was just as long as it took to obtain the requisite governmental approval and perform the necessary work. The parcel was dramatically improved by Developers, in that it subdivided the land, annexed the property, prepared the tract map, installed curbs, gutters, sidewalks, streets, water and sewer lines, as well as *404 the many other activities associated with residential development. Developers employed advertising to market its inventory of houses and employed a full time sales agent who was stationed in the sales office on the parcel. Finally, Developers' primary source of income was attributable to sales of the lots during 1979 and 1980. The full inventory of 70 houses was sold in those two years. Since the character of the gain from the sale of the lots at the partnership level is attributed to petitioner, we find that his distributive share should be treated as ordinary income. Because we have so found, petitioner is liable for self-employment tax. Sec. 1401. Section 1402(a) defines the term "net earnings from self-employment" as follows: the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss * * * from any trade or business carried on by a partnership of which he is a member. *405 Because we have found that petitioner received a distributive share from a trade or business of which he was a partner, he is liable for self-employment tax. Sec. 1401. Respondent also determined that petitioners are liable for additions to tax for negligence and/or intentional disregard of rules and regulations under section 6653(a). Petitioners bears the burden of proving that his actions were not negligent and that he did not intentionally disregard the rules and regulations of the Internal Revenue Code. Rule 142(a). We note that petitioner originally reported his gain for tax year 1979 as ordinary income and then later filed an amended return, backing out the ordinary gain and recharacterizing it as capital gain. Petitioner similarly characterized his gain for tax year 1980 as capital. Had petitioner originally taken the position, through ignorance, that the sales of lots resulted in capital gain income, our decision as to his negligence might have been more difficult; however, his decision to file an amended return changing the character of the gain from ordinary to *406 capital points out that he gave serious consideration to the character of the gain. If petitioner had given the attention to this question which it deserved, he should have concluded that the Form K-1 he received was correct. Petitioners are liable for additions to tax attributable to negligence for tax years 1979 and 1980. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code, as in effect for the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. In addition to other concessions, respondent conceded that petitioners did not have $ 15,050 in ordinary income from the sale of an individual lot, as respondent had previously determined in his statutory notice.↩