BROWN GROUP, INC. AND SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown Group v. Commissioner
Docket No. 104-92
United States Tax Court
102 T.C. 616; 1994 U.S. Tax Ct. LEXIS 26; 102 T.C. No. 24; April 12, 1994, Filed *26 P1 is a member of an affiliated group of corporations that filed a consolidated Federal corporate income tax return for the year in issue. P is the parent of the affiliated group. R determined that P1's distributive share of a foreign partnership's (FP's) income is foreign base company sales income that is includable in the consolidated gross income of P as subpart F income. Relying on the holding in Rev. Rul. 89-72, 1989-1 C.B. 257, R contends that the income P1 received from FP should be considered as if earned by P1 directly from the source from which received by FP. P contends that P1's distributive share of FP's income is not subpart F income. Held, the character of P1's distributive share of FP's income is determined at the partnership level. Held, further, P1's distributive share of FP's income is not subpart F income. Held, further, the holding in Rev. Rul. 89-72, 1989-1 C.B. 257, is incorrect; hence, the Court will not follow it. For petitioner: Harold G. Blatt, Juan D. Keller, and Philip B. Wright. For respondent: James A. Kutten and Richard A. Witkowski. *27 JACOBS
JACOBS
JACOBS, Judge: Respondent determined a deficiency in petitioner's consolidated Federal income tax for its taxable year ended November 1, 1986, in the amount of $ 388,992.85. The only issue in dispute is whether Brown Cayman Ltd.'s (Brown Cayman's) distributive share of partnership income from Brinco, a Cayman Islands partnership, is subpart F income, includable in the consolidated gross income of Brown Group, Inc. (Brown Group), a New York corporation, under section 951(a). We hold that it is not. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate the stipulation of facts and attached exhibits. Brown Group is the common parent of an affiliated group of corporations which timely filed a consolidated Federal corporate income tax return for its taxable year ended November 1, 1986. Now and throughout the period in issue, the stock of Brown Group was traded on the New York Stock Exchange. The principal place of business of Brown Group at the time the petition was filed, and at all relevant times, *28 was St. Louis, Missouri. The following diagram facilitates an understanding of the relationship of the parties involved: [See Diagram in Original] Throughout 1985 and 1986, Brown Group manufactured, imported, and sold (through its divisions) footwear at the retail and wholesale levels. Such footwear was manufactured in the United States or imported from other countries, including Brazil. Brown Group also sold fabric, family fashions, home decorating items, jewelry, and cosmetics through a retail division. Brown Group International, a Delaware corporation, was incorporated in 1985. Throughout 1985 and 1986, Brown Group International was a United States shareholder of Brown Cayman within the meaning of section 951(b). Brown Cayman, a Cayman Islands corporation, was incorporated in 1985. Brown Cayman was a controlled foreign corporation within the meaning of section 957(a) at all times relevant to this case. Brinco, a partnership within the meaning of section 7701, and the regulations thereunder, was formed in March 1985. T.P. Cayman, Ltd. (TP Cayman), a Cayman Islands corporation, was incorporated in March 1985. Pidge, Inc. is a Missouri corporation; the date of its incorporation *29 is not contained in the record. Prior to the formation of Brinco, Brown Group utilized independent agents to purchase Brazilian manufactured footwear. At that time, Delcio Birck (Birck), a Brazilian citizen, and Ted Presti (Presti), a U.S. citizen, were employed by a company which purchased Brazilian manufactured shoes on behalf of Brown Group and others. In order to attract both Presti and Birck to source Brazilian footwear exclusively for Brown Group, and to consolidate Brown Group's Brazilian buying power, Brinco was formed. Brinco was structured as a partnership because: (1) Presti's salary requirements could not be satisfied within Brown Group's existing payroll structure; (2) it allowed Presti and Birck to have entrepreneurial interests in Brinco's operations; and (3) it permitted the partners to avoid Brazilian currency controls and currency fluctuations. During 1985 and 1986, Brinco acted as purchasing agent for the Brown Group with respect to footwear manufactured in Brazil. The footwear so imported was sold primarily in the United States. Presti was the managing partner of Brinco. As such he was responsible for the design, manufacture, and quality control of the *30 footwear. He also supervised Brinco's operations within Brazil. Both Presti and Birck conducted a substantial portion of their activities on behalf of Brinco within Brazil. When not in Brazil, Presti conducted Brinco's operations out of Brown Group's offices in St. Louis, Missouri. Respondent concedes that Brinco is not a sham. Brown Group paid Brinco a 10-percent commission for acting as its Brazilian purchasing agent. The commission was based on the purchase price of the footwear. For 1985, Brown Group's sales of footwear from Brazilian manufacturers for which Brinco acted as agent totaled $ 11,199,695; Brinco's commissions from such sales were $ 1,119,970. The amount of the commissions was included in Brown Group's inventory cost. For the 7-month period beginning April 1985 to November 2, 1985, TP Cayman received guaranteed payments in 1985 totaling $ 151,662 ($ 21,666 a month for 7 months), instead of its distributive share of partnership earnings for such period. After making guaranteed payments to TP Cayman, Brinco's partnership net earnings for 1985 totaled $ 917,465, which were distributed as follows: Brown Cayman
98 percent
$ 897,281
Birck
2 percent
$ 20,184 *31 In 1986, TP Cayman received its distributive share of partnership income rather than the guaranteed monthly payments. Brinco was dissolved on October 31, 1987. At that time, Presti became executive vice president of Brown Group International and Birck, as an independent agent, continued to source footwear for Brown Group International on a commission basis. Respondent determined that Brown Cayman's distributive share of Brinco's earnings is foreign base company sales income, includable as subpart F income in the consolidated gross income of Brown Group. OPINION A. Subpart F of the Code
1. General Rules
A "United States shareholder" of a "controlled foreign corporation" must include in gross income its pro rata share of the controlled foreign corporation's "subpart F income" for such year. Sec. 951(a)(1). A "United States shareholder" is defined as a "United States person" who owns or is considered as owning 10 percent or more of the total combined voting power of all classes of stock entitled to vote of a controlled foreign corporation. Sec. 951(b). The definition of a "United States person" includes a citizen or resident of the United States, a domestic partnership, *32 a domestic corporation, and certain trusts and estates. Secs. 957(d), 7701(a)(30). A "controlled foreign corporation" is any foreign corporation of which more than 50 percent of the total combined voting power of all classes of stock entitled to vote is owned or is considered as owned by "United States shareholders" on any day during the taxable year. Sec. 957(a). With respect to the instant case, it is undisputed that Brown Cayman is a foreign corporation and that Brown Group International owns 100 percent of the total combined voting power of all classes of Brown Cayman stock. As such, Brown Cayman is a controlled foreign corporation within the purview of section 957(a). Since Brown Group International owns 100 percent of the total combined voting power of all classes of Brown Cayman's stock, Brown Group International is a "United States shareholder" of a "controlled foreign corporation" and thus must include in gross income its pro rata share of any "subpart F income" earned by Brown Cayman. Sec. 951(a)(1). 2. Subpart F Income Defined
"Subpart F income", as defined under section 952(a), is the sum of four specifically defined types of income. Section 952(a) reads *33 in pertinent part: (a) In General. -- For purposes of this subpart, the term "subpart F income" means, in the case of any controlled foreign corporation, the sum of -- * * * (2) the foreign base company income (as determined under section 954) * * * [Emphasis added.]
Only one type of "subpart F income", specifically "foreign base company income", is involved in this case. Section 952(a)(2) provides that "foreign base company income" is determined under section 954. "Foreign base company income", as defined under section 954(a), is the sum of five specifically defined types of income. Only one type of "foreign base company income", specifically "foreign base company sales income", is involved in this case. Section 954(d)(1) defines "foreign base company sales income" as follows: (d) Foreign Base Company Sales Income. -- (1) In General. -- For purposes of subsection (a) (2), the term "foreign base company sales income" means income (whether in the form of profits, commissions, fees, or otherwise) derived in connection with the purchase of personal property from a related person and its sale to any person, the sale of personal property *34 to any person on behalf of a related person, the purchase of personal property from any person and its sale to a related person, or the purchase of personal property from any person on behalf of a related person where -- (A) the property which is purchased (or in the case of property sold on behalf of a related person, the property which is sold) is manufactured, produced, grown, or extracted outside the country under the laws of which the controlled foreign corporation is created or organized, and (B) the property is sold for use, consumption, or disposition outside such foreign country or, in the case of property purchased on behalf of a related person, is purchased for use, consumption, or disposition outside such foreign country.
A "related person" is defined in section 954(d)(3), as in effect for the taxable year in issue (former section 954(d)(3)), as follows:
(3) Related Person Defined. -- For purposes of this section, a person is a related person with respect to a controlled foreign corporation, if -- (A) such person is an individual, partnership, trust, or estate which controls the controlled foreign corporation; (B) such person is a corporation *35 which controls, or is controlled by, the controlled foreign corporation; or (C) such person is a corporation which is controlled by the same person or persons which control the controlled foreign corporation.
For purposes of the preceding sentence, control means the ownership, directly or indirectly, of stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote. For purposes of this paragraph, the rules for determining ownership of stock prescribed by section 958 shall apply. [Emphasis added.]
Petitioner argues that under former section 954(d)(3) (the law applicable to the dispute in this case), Brinco was not a related person to Brown Cayman or Brown Group International. Petitioner further argues that absent such relationship under former section 954(d)(3), Brown Cayman's distributive share of the Brinco partnership income is not subpart F income with respect to Brown Cayman or Brown Group International. Respondent does not dispute that, under former section 954(d)(3), Brinco was not a related person to Brown Cayman or Brown Group International. Instead, respondent argues that the general principles *36 of the aggregate theory of partnership taxation require that Brown Cayman be treated as if its distributive share of Brinco's income had been earned directly from the source from which Brinco earned its income and, after applying such concept, that Brown Cayman's distributive share of Brinco's income would be subpart F income to Brown Cayman. As such, respondent further argues that Brown Group International, the U.S. shareholder of Brown Cayman, must include its pro rata share of Brown Cayman's subpart F income in its gross income under section 951(a). We agree with petitioner. Although we accept petitioner's conclusion that Brown Cayman's distributive share of the Brinco partnership income is not subpart F income with respect to Brown Cayman or Brown Group International, we arrive at such conclusion by way of an analysis different from that advanced by petitioner. B. Level at which Characterization of Income Determined -- Partner vs. Partnership Level
1. Applicable Partnership Taxation Concepts
A partnership itself is not subject to Federal income tax. Sec. 701. Rather, persons carrying on a business as partners bear the tax burden in their separate capacity. *37 Each partner generally takes into account his distributive share of the partnership's income, gain, loss, deduction, and credit. Secs. 701, 702(a), 702(c), and 703(a). The character of these items is determined under section 702(b). Specifically, section 702(b) states: The character of any item of income, gain, loss, deduction or credit included in a partner's distributive share * * * shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership. [Emphasis added.]
Furthermore, section 1.702-1(b), Income Tax Regs., states that: the character in the hands of a partner of any item of income, gain, loss, deduction, or credit * * * shall be determined as if such item were realized directly from the source from which realized by the partnership or incurred in the same manner incurred by the partnership. For example, a partner's distributive share of gain from the sale of depreciable property used in the trade or business of the partnership shall be considered as gain from the sale of such depreciable property in the hands of the partner. *38 Similarly, a partner's distributive share of partnership "hobby losses" (section 270) or his distributive share of partnership charitable contributions to organizations qualifying under section 170(b)(1)(A) retains such character in the hands of the partner.
The segregation of these items neutralizes the tax effects of the use of the partnership form and preserves the character of each item in the hands of the partners. 1 McKee et al., Federal Taxation of Partnerships and Partners, 9.01[3][a], p. 9-9 (2d ed. 1990). Thus, the integrity of other Code provisions that impose limitations on the computation of taxable income, gain, loss, deductions, or credits is protected. The partnership items that must be separately accounted for under section 702(a) are: (1) Short-term capital gains and losses; (2) long-term capital gains and losses; (3) section 1231 gains and losses; (4) charitable contributions; (5) dividends or interest with respect to which there is an exclusion under section 116 or section 128 or a deduction under sections 243-247; (6) foreign taxes described in section 901; (7) other items of income, gain, loss, deduction, or credit, to the extent provided by regulations; *39 and (8) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection. Section 1.702-1(a)(8)(i), Income Tax Regs., requires a number of additional items to be separately accounted for by each partner as follows: Each partner shall take into account separately, as part of any class of income, gain, loss, deduction, or credit, his distributive share of the following items: recoveries of bad debts, prior taxes, and delinquency amounts (section 111); gains and losses from wagering transactions (section 165(d)); soil and water conservation expenditures (section 175); nonbusiness expenses as described in section 212; medical, dental, etc., expenses (section 213); expenses for care of certain dependents (section 214); alimony, etc., payments (section 215); amounts representing taxes and interest paid to cooperative housing corporations (section 216); intangible drilling and development costs (section 263(c)); pre-1970 exploration expenditures (section 615); certain mining exploration expenditures (section 617); income, gain, or loss to the partnership under section 751(b); and any items of income, gain, loss, deduction, or credit *40 subject to a special allocation under the partnership agreement which differs from the allocation of partnership taxable income or loss generally.
Each of the items of income, gain, deduction, loss, and credit set forth in section 1.702-1(a)(8)(i), Income Tax Regs., will affect an individual partner's tax liability if such items are separately stated by the partnership and separately accounted for by the partner, rather than included in an overall partnership accounting. Thus, they must be separately taken into account by the partner. In addition, section 1.702-1(a)(8)(ii) states: Each partner must also take into account separately his distributive share of any partnership item which if separately taken into account by any partner would result in a income tax liability for that partner different from that which would result if that partner did not take the item into account separately. * * *
The central issue herein is whether Brown Cayman's distributive share of Brinco's income is subpart F income to Brown Cayman. As previously stated, we hold that it is not. Our reasons for such conclusion are as follows: Brinco is not a controlled foreign corporation within the *41 purview of section 957(a). Thus, Brinco's income is subpart F income to Brown Cayman only if the existence of Brinco as an entity is to be ignored and Brown Cayman is to be treated as if it engaged in the activities of Brinco; i.e., an aggregate theory of partnership taxation is adopted. We believe that Brinco as an entity should be respected [1] and that the determination of whether Brown Cayman's distributive share of Brinco's income is subpart F income to Brown Cayman should be made at the partnership level. 2.Rev. Rul. 89-72, 1989-1 C.B. 257
Respondent relies on Rev. Rul. 89-72, 1989-1 C.B. 257, to support *42 her position that the determination of foreign base company sales income is to be made at the partner level. Rev. Rul. 89-72 involved the following situation: P, a domestic corporation, manufactured machines in the United States. It had a wholly owned Country Y subsidiary, S. S, a controlled foreign corporation, owned a 25-percent interest in PRS, a partnership organized in Country X. The remaining 75 percent was owned by an unrelated Country X corporation. PRS purchased machines from P for sale and use in Country X. The ruling held that S's distributive share of PRS's income earned from the sale of machines purchased from P is to be treated as foreign base company sales income. The ruling, relying on section 702(b) and the regulations thereunder, concluded that if S had directly sold the machines purchased from P in Country X, such income would have been foreign base company income to S. The ruling stated that for purposes of section 954(a), the character of an item of income included in a controlled foreign corporation partner's distributive share is to be determined as if realized directly by the partner. Thus, Rev. Rul. 89-72 *43 adopted the aggregate theory of partnership taxation in characterizing the income of a controlled foreign corporation partner. A revenue ruling is not binding precedent upon a court. See Stark v. Commissioner, 86 T.C. 243, 250-251 (1986); Neuhoff v. Commissioner, 75 T.C. 36, 46 (1980), affd. 669 F.2d 291 (5th Cir. 1982). A ruling is merely the opinion of a lawyer in an agency. See Stubbs, Overbeck & Associates, Inc. v. United States, 445 F.2d 1142, 1146-1147 (5th Cir. 1971). A court will disregard a revenue ruling if it conflicts with the statute it supposedly interprets, with the statute's legislative history, or if it is otherwise unreasonable. See Threlkeld v. Commissioner, 848 F.2d 81, 84 (6th Cir. 1988), affg. 87 T.C. 1294 (1986); Brook, Inc. v. Commissioner, 799 F.2d 833, 836 n.4 (2d Cir. 1986), affg. T.C. Memo. 1985-462 and supplemental opinion T.C. Memo. 1985-614; Propstra v. United States, 680 F.2d 1248, 1256-1257 (9th Cir. 1982). *44 We believe the holding in Rev. Rul. 89-72 is incorrect; hence, we will not follow it. 3. Analysis
The relevant provisions of subpart F of the Code are silent as to whether the entity approach or the aggregate approach applies in the context of the facts involved herein. Hence, we must look outside the text of the Code for a resolution of the issue presented. No court has addressed the issue of whether in the context of subpart F of the Code, section 702(b) should be interpreted as determining the character of income at the partner level (aggregate approach) or at the partnership level (entity approach). For the most part, the cases that have directly considered whether partnership items should be characterized at the partner or partnership level have generally concluded that the characterization question should be resolved at the partnership level. See 1 McKee et al., Federal Taxation of Partnerships and Partners, 9.01[4][a], p. 9-19 (2d ed. 1990) (the authors also note that partnership-level characterization is virtually required by the overall sense of the partnership taxation statutory framework). The United States Supreme *45 Court has stated that for purposes of calculating partnership income, "the partnership is regarded as an independently recognizable entity apart from the aggregate of the partners". United States v. Basye, 410 U.S. 441, 448 (1973). The Court also noted: The legislative history indicates, and commentators agree, that partnerships are entities for purposes of calculating and filing informational returns but that they are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares. [Id. n.8; citations omitted.]
Recent cases cite United States v. Basye, supra, in holding that characterization of partnership income derived from the sale of property takes place at the partnership level. For example, in Pleasant Summit Land Corp. v. Commissioner, 863 F.2d 263 (3d Cir. 1988), affg. in part and revg. in part T.C. Memo. 1987-469, the court upheld this Court's factual finding that the sale of real estate held by a partnership was properly characterized as a capital gain. In holding that such *46 characterization takes place at the partnership level, the Court of Appeals quoted Bayse and concluded: "we must make our analysis of the investment from the point of view of the partnership". Id. at 272. [2]
In Barham v. United States, 301 F.Supp. 43 (M.D. Ga. 1969), affd. 429 F.2d 40 (5th Cir. 1970), the District Court held that, where the trade or business of a joint venture was the purchase, development, and sale of real estate, the partner-taxpayer's distributive share of income received from the sale of real estate was not entitled to capital gain treatment even though the partner was not engaged in the real estate *47 business. Id. at 46-49. [3] The court referred to section 702(b) as the "conduit rule" and stated: The clear inference to be drawn from the Code sections and the regulation is that, as a general rule, for the purpose of determining the nature of an item of income, deduction, gain, loss or credit * * * the partnership is to be viewed as an entity and such items are to be viewed from the standpoint of the partnership (or joint venture) rather than from the standpoint of each individual member. * * * [Id. at 46.]
The court also added: It follows that in section 1221(1) the words "his trade or business" mean the trade or business of the partnership, even though under section 701 partnerships are not liable for income tax. * * * [Id.]
*48 In McManus v. Commissioner, 583 F.2d 443 (9th Cir. 1978) 65 T.C. 197 (1975), the Court of Appeals affirmed this Court's holding that a section 1033 election must be made at the partnership level. The Court of Appeals rejected the taxpayer's argument that the partnership was not a taxable entity stating: While it is true that a partnership is not liable for tax * * * [it] is required to file returns and the partners are required to conform their individual returns to the partnership returns. If each partner could determine his share of the partnership income separately, confusion would result, confusion which Congress meant to avoid * * * [Id. at 448; citation omitted.]
In Davis v. Commissioner, 74 T.C. 881 (1980), affd. 746 F.2d 357 (6th Cir. 1984), we held that the special allocation to a partner-taxpayer of royalties paid to the partnership retains its character as a capital gain under section 631(c) in the hands of the taxpayer. We reviewed section 702(b) and stated: "This language has been consistently interpreted to *49 mean that the character of partnership income is determined at the partnership level". Id. at 905-906 (citing United States v. Basye, 410 U.S. 441 (1973); Podell v. Commissioner, 55 T.C. 429 (1970); Grove v. Commissioner, 54 T.C. 799 (1970); sec. 1.702-1(b), Income Tax Regs.). This Court and several circuits have addressed the issue of profit motive, for purposes of section 162, with respect to partnerships. All have held that such characterization is to be made at the partnership level. For example, in Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982), the court held that, in determining whether a partner-taxpayer was entitled to any claimed deductions which were attributable to cash paid by the partnership for a movie, the profit-motive analysis was properly made at the partnership level. [4]
*50 In Goodwin v. Commissioner, 75 T.C. 424 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982), this Court also held that profit motive under section 162 is properly applied at the partnership level, and we noted that section 702(b) "has been held to require that the character of the items comprising the partnership income or loss be determined at the partnership level". Id. at 436 (citing Davis v. Commissioner, 74 T.C. 881, 905-906 (1980), affd. 746 F.2d 357 (6th Cir. 1984); Miller v. Commissioner, 70 T.C. 448, 455-456 (1978); Podell v. Commissioner, 55 T.C. 429, 432-434 (1970); Grove v. Commissioner, 54 T.C. 799, 803-805 (1970)). In Goodwin v. Commissioner, supra at 437, we then concluded: "that in the context of section 162, the character of the deductions, i.e., whether they were incurred in the course of a trade or business must be resolved at the partnership level." In addition, in Campbell v. United States, 813 F.2d 694 (5th Cir. 1987), *51 the court held that the attribution of a loss to a trade or business for the purposes of section 172(d)(4) (which allows certain business deductions in calculating a net operating loss) must be made at the partnership level: "We have held that under section 702(b), partnership business deductions may be attributed to the individual partner-taxpayer only if such deductions were incurred in the partnership's trade or business". Id. at 695-696 (citing Tallal v. Commissioner, 778 F.2d 275, 276 (5th Cir. 1985)). In Resnik v. Commissioner, 66 T.C. 74, 81 (1976), affd. without published opinion 555 F.2d 634 (7th Cir. 1977), we concluded that, under section 446(b), we must "first look at the partnership level to ascertain whether the prepayment of interest results in a distortion of income". In so concluding, we reasoned: The partnership return is more than just an information return. It has consequences that go beyond the mere disclosure to the Commissioner of profits of the enterprise * * * And in computing its net income under the revenue laws, it is generally *52 the partnership, not the individual partner, that exercises the various options open to taxpayers in computing net income under the Code. * * *
Id. at 80-81 (quoting Scherf v. Commissioner, 20 T.C. 346, 347-348 (1953)). In Rev. Rul. 68-79, 1968-1 C.B. 310, the IRS characterized as long-term capital gain a partner's distributive share of capital gain upon the sale of securities because, even though the partner held his partnership interest for less than 6 months, the partnership held the securities longer than the requisite holding period. The ruling stated: The character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share under paragraphs (1) through (8) of section 702(a) of the Code is determined at the partnership level. [Rev. Rul. 68-79id. at 310; emphasis added and citation omitted.]
Similarly, the Service has ruled that characterization of ordinary loss under section 1231 must take place at the partnership level. Rev. Rul. 67-188, 1967-1 C.B. 216. *53 Likewise, in Rev. Rul. 77-320, 1977-2 C.B. 78, the Service expressed the position that section 183 applies to partnerships at the partnership level. As respondent correctly points out, in Casel v. Commissioner, 79 T.C. 424, 430-435 (1982), this Court upheld a regulation which applied the aggregate approach to partnership distributions for purposes of applying the rules of section 267(a). Respondent's reliance on Casel, in support of Rev. Rul. 89-72, 1989-1 C.B. 257, however, is misplaced. Casel did not involve the determination of the character of an item of income. We therein upheld a regulation which utilized the aggregate concept to disallow losses or accruals between related persons. In Casel, we recognized that the longstanding interpretation of section 267 and its predecessor was consistent with the regulation in question. In the instant case, however, there exists no doctrine, longstanding or otherwise, which supports the application of the aggregate theory of taxation to the facts herein. Likewise, respondent's reliance on the fact that a number *54 of regulations interpreting section 954(f) (namely, sections 1.954-6(g), 1.955A-2(d), 1.955A-2(g)(4), Income Tax Regs.) apply the aggregate approach, is misplaced. These regulations explicitly adopt the aggregate approach based on section 954(f)(2). Contrary to respondent's assertion, the explicit language of the above-cited provisions indicates to us that the entity theory of taxation is the general rule of subpart F of the Code. In nearly every context in which the issue of characterization is relevant to the facts of this case, this Court and other courts have concluded that the proper level for characterization of an item of income is at the partnership level. Applying the teachings of these cases to the determination of foreign base company sales income, we hold that Rev. Rul. 89-72, 1989-1 C.B. 257, improperly applies the aggregate theory of taxation to the facts considered therein. After applying basic entity partnership taxation principles to the facts herein, we conclude that no part of Brown Cayman's distributive share of Brinco's income is subpart F income. We reemphasize that in defining subpart F income, section *55 952(a) explicitly states that "For purposes of this subpart, the term 'subpart F income' means, in the case of any controlled foreign corporation," the sum of certain enumerated types of income. (Emphasis added.) Since Brinco is clearly not a controlled foreign corporation under section 957(a), none of the income earned by Brinco is subpart F income to Brinco under section 952(a). As required by section 702(b) and section 1.702-1(b), Income Tax Regs., the character of the income earned by Brinco remains the same in the hands of Brown Cayman. Since such income is not subpart F income to Brinco, it cannot be subpart F income to Brown Cayman. Accordingly, respondent's determination that Brown Cayman's distributive share of Brinco's income is includable in the consolidated gross income of Brown Group as subpart F income is not sustained. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. Respondent concedes that Brinco is not a sham. Of course, if a partnership in another factual setting were found to be a sham, we might disregard the existence of such partnership, with the result that the income earned by the partnership might be characterized as subpart F income to the controlled foreign corporation.↩
2. See also Simon v. Commissioner, 830 F.2d 499, 506-507 (3d Cir. 1987) (determination of whether an expense is deductible is dependent upon partnership's motive, not by an individual's purpose in joining the partnership), affg. T.C. Memo. 1986-156↩.
3. See also Estate of Freeland v. Commissioner, 393 F.2d 573, 584 (9th Cir. 1968), ("it is the intent of the partnership, and not of any individual partner, that is in issue according to the Internal Revenue Code"), affg. T.C. Memo. 1966-283; Podell v. Commissioner, 55 T.C. 429, 431-434 (1970) (holding that joint venture arrangement was to be treated as a partnership for tax purposes and that the character of real estate sales income was determined at the partnership level); Stivers v. Commissioner, T.C. Memo. 1973-244↩ (holding that the character of gains from sales of real estate by partnership was to be determined at the partnership level).
4. See also Polakof v. Commissioner, 820 F.2d 321, 323, (9th Cir. 1987) ("We agree with the Fifth and Eleventh Circuits that it is the dominant economic motive of the partnership, not that of the individual investors, that is determinative."), affg. T.C. Memo. 1985-197; Tallal v. Commissioner, 778 F.2d 275, 276 (5th Cir. 1985) ("When the taxpayer is a member of a partnership, we have interpreted * * * [section] 702(b) to require that business purpose must be assessed at the partnership level."), affg. T.C. Memo. 1984-486; Madison Gas & Elec. Co. v. Commissioner, 633 F.2d 512, 517 (7th Cir. 1980) (expenses characterized as "pre-operational costs" of partnership even though general partner was already in the same business), affg. 72 T.C. 521↩ (1979).